## MOORE *vs.* ROSS.

The plaintiff and defendant made a verbal agreement, that the plaintiff should furnish a certain portion of the seed necessary to sow a piece of land belonging to the defendant, should perform all the labor, &c., harvest the crop, and deliver a portion of it to the defendant, retaining a proportion of it for his own compensation. After the seed had been sown, the parties made another agreement by parol, that the defendant should pay the plaintiff for what he had done in sowing the land, and the defendant took the whole of the crop, and applied it to his own use.

*Held*, that although an action would not lie to recover damages for the breach of the original agreement, which was within the statute of frauds, yet that the defendant was liable upon his subsequent undertaking to pay the plaintiff for what he had done.

The general rule is, that the whole of an admission made by a party is to be taken and construed together.

But when a defendant admits that he received certain articles of personal property, to recover the value of which an action is brought against him, his assertion at the same time, that he had a right to the articles, does not do away the effect of his admission that he received them, where it appears that he had no right to take them.

Where a party desires a particular instruction in matter of law to be given to the jury, but does not at the trial move the court so to instruct the jury, the verdict will not be set aside because the instruction was not given.

ASSUMPSIT. The declaration contained four counts. The first count alleged, that on the first day of September, 1824, the plaintiff and one Edward Pickett made an agreement with the defendant, by which they were to take a piece of land of him, to sow upon shares. The defendant was to furnish one half the seed, and they were to furnish the other half, and were to do all the labor, to fence the land, thresh the grain, and deliver one half of it to the defendant, and divide the other half equally between them. The declaration then alleged that afterwards they sowed the land, and furnished one half the seed; that Pickett, on the first day of April, 1825, sold the defendant all his interest in the grain; that the plaintiff offered to build his part of the fence, and perform what remained to be done on his part; and that afterwards, in consideration that the plaintiff, at the request

of the defendant, had relinquished to the defendant his interest in the contract and growing crop, and had permitted the defendant to take and appropriate to his own use the whole of the crop, the defendant promised to pay the plaintiff for the grain which he had furnished, and the labor he had bestowed under the agreement, which, the plaintiff alleged, were worth the sum of $26.68.

The second count, after setting forth the contract, and the sale by Pickett of his interest to the defendant, alleged that in consideration that the plaintiff had sold and relinquished to the defendant all his interest in the crop, and had permitted him to take and appropriate the whole of it to his own use, the defendant promised to pay the plaintiff so much as it was reasonably worth, which the plaintiff alleged to be the sum of $26.68.

The third count was *indebitatus assumpsit*, for a crop of wheat and rye sold to the defendant by the plaintiff, and cut down and accepted by the defendant.

The fourth count was for one undivided fourth part of a growing crop of wheat and rye, sold by the plaintiff to the defendant, and cut down and received by him.

Upon the trial, to prove the contract the plaintiff offered in evidence the deposition of Pickett, who testified that he and the plaintiff made the contract with the defendant, as set forth in the declaration, and that he sold all his interest therein to the defendant.

The plaintiff also offered the deposition of Jonathan Noyes, who testified that he sowed the grain, which he understood was furnished by the parties, and that in the course of the next winter he threshed the grain which grew upon the land, and that Ross said that he took the whole of the crop, and that he had a right to take it.

The plaintiff proved by Thomas Moore, that the defendant asked the plaintiff if he would take his pay for what he had done in sowing the ground; and upon the plaintiff's answering that he would, the defendant called on the witness to

take notice, that he said the plaintiff should have his pay for sowing the grain.

The jury returned a verdict for the plaintiff, and the defendant moved to set it aside, for the following reasons:

Because the deposition of Edward Pickett was admitted to prove an interest in land and in the growing crop in the plaintiff, for which purpose it was not competent.

Because the deposition of Thomas Moore was admitted to prove an assignment of an interest in land, for which it was not competent.

Because the plaintiff cannot maintain either of the counts upon proof of the fact merely that Ross cut and appropriated the crop to his own use, nor can he maintain this form of action.

Because there was no evidence tending to prove the allegation in the declaration, of permission by the plaintiff given to the defendant to cut, receive, and accept the crop.

Because there is no proof of acceptance of the crop, except as contained in the deposition of Noyes, derived from the admission of the defendant, which proves not only that he received the grain, but that he had the interest in the grain, and a right to take it, and all parts of it must be construed together; and when so construed, the admission has no tendency to prove the defendant's liability, or a promise on his part to pay for the grain.

Because the court did not instruct the jury that if they found no evidence of any contract but to buy a growing crop, and that by parol, the plaintiff could not sustain this action, each count being founded on the sale of a standing or growing crop, to be cut and harvested by the defendant.

*Joseph Bell*, for the defendant.

*Perley*, for the plaintiff.

GILCHRIST, J.* Most of the questions raised by the exceptions depend on the nature of the last contract made between the plaintiff and the defendant.

The contract originally made between the plaintiff and Pickett on the one side, and the defendant on the other, is free from any doubt. They were to furnish a part of the seed, to sow the land, harvest the crop, and deliver one half of it to the defendant. Without enquiring, at present, into the interest, if any, which this contract gave them in the land, the first question which presents itself, is, as to the nature of the claim now made by the plaintiff upon the defendant, for which this action is brought.

The first count in the declaration alleges, that in consideration that the plaintiff had relinquished to the defendant his interest in the contract and growing crop, and had permitted the defendant to take and appropriate to his own use the whole of the crop, the defendant promised to pay him so much money as the grain which the plaintiff had found and the labor which he had performed under the agreement, were reasonably worth.

The evidence is, that the plaintiff proposed to the defendant to build his (the plaintiff's) part of the fence around the land sowed, and have his share of the crop. The defendant said that he did not wish him to build the fence; and asked him if he would take his pay for what he had done in sowing the ground? The plaintiff said that he would. The defendant thereupon said that the plaintiff should have his pay for sowing the grain.

Here, then, was a proposition by the defendant to pay the plaintiff for what he had done in sowing the ground, an assent by the plaintiff, and an undertaking by the defendant that he should be paid.

This undertaking was evidently in consideration that the plaintiff gave up all his right under the former contract. It is said by the court, upon a former trial of this case, 7 *N. H.*

---

* WOODS, J., having been of counsel, did not sit.

*Rep.* 533, that the new agreement was " in substance, that in consideration the plaintiff would sell his interest in the crop, the defendant would purchase it, and pay for it the value of the grain, and of the labor expended in sowing it ; or, according to the language of the parties, that he would pay the plaintiff for what had been done in sowing the grain."

The fourth exception taken by the defendant, is, because there was no evidence of any permission given by the plaintiff to the defendant to take the crop.

The contract of the defendant, that he would pay the plaintiff for the seed he had furnished, and the labor he had performed, would vest the property in the crop, when raised, in the defendant, and no other person would have any right to take it. The permission to take the crop follows, as a legal consequence. Why, then, should the party be called upon to prove that which the law implies ? It is difficult to find language to convey this idea more clearly than by a bare statement of the proposition. But there is evidence also upon the point. Noyes says that Ross admitted that he took the whole of the crop. Here, then, is evidence that the plaintiff agreed to take his pay for what he had done, that the defendant undertook to pay him, and that he took the crop. The plaintiff, then, did permit him to take the crop without obstruction, and we think that this exception cannot be maintained.

The defendant excepts, because the testimony of Pickett was admitted to prove an interest in the land, and in the growing crop in the plaintiff, and because the testimony of Thomas Moore was admitted to prove an assignment of an interest in land.

These exceptions imply, that all the interest which the plaintiff had, was an interest in the land, which could be shown only by an agreement in writing.

The original agreement, conferring as it did an exclusive right to the land for a limited time, and for all purposes

necessary to a proper cultivation of the soil, was a contract for the sale of an interest in, or concerning lands. *Crosby* vs. *Wadsworth*, 6 *East* 602. It was not, however, absolutely void, so that it could not be the foundation of any valid promise, express or implied. If no alteration had been made in the contract; but it had been executed, and the defendant had taken the whole crop to his own use, so that the plaintiff could not receive his proportion of it, the plaintiff would have had a right of action to recover it. *Bragg* vs. *Cole*, 6 *J. B. Moore* 114. So in *Teall* vs. *Auty*, 2 *Brod. & B.* 99, the defendant purchased some poles when growing, and afterwards cut and carried them away. A memorandum was made of the bargain; but as it was neither stamped nor signed by the parties, it was not produced in evidence, and the plaintiff was nonsuited. But it is said by the court, that "although an action would not lie to enforce such a contract, still, whatever the original agreement might have been, the poles were taken away, and the agreement executed; and if the plaintiff could have proved the amount due to him by any other evidence, there might have been no necessity for referring to the original agreement. We need not refer to a variety of cases, where, upon an executed agreement, the party is entitled to recover, although he could never have prevailed had the contract been contested before it was executed."

So in *Mayfield* vs. *Wadsley*, 3 *B. & Cr.* 357, which was *indebitatus assumpsit* for crops of wheat, hay and corn bargained and sold the defendant, and where the defendant had taken the crops, it is said by Abbott, C. J., " supposing that the plaintiff cannot recover upon a declaration for crops bargained and sold, founded on the original contract, on the ground that it is void by the statute of frauds, yet I think he may recover on a declaration, stating that the defendant was indebted for the value of crops sown by the plaintiff on land in his possession, and which the defendant was allowed to take, and for which he promised to pay."

Moore *v.* Ross.

These views proceed on the position, that if the original contract had been executed, a state of facts might exist which would authorize the plaintiff to recover, although the contract could not be enforced on a suit for the breach of it.

If, then, the contract had not been modified, and no new agreement had been substituted in its place, the defendant could not have interposed any defence, arising out of the statute of frauds, if he had received more than his proportion of the crop.

Now here is evidence of a new agreement substituted for the old one, and this agreement has been executed. Without considering, for the present, the question whether the evidence of an admission by the defendant that he had received the whole of the crop, can be modified by his assertion of a right to take the whole, the enquiry is, was the subject matter of the new agreement an interest in, or concerning lands, so as to be within the statute of frauds?

The case of *Poulter* vs. *Killingbeck*, 1 *B. & P.* 397, is analogous to the one before us. That was *indebitatus assumpsit*, for the moieties of divers crops of wheat and coleseed sold the defendant, and which the defendant, in consequence of such sale, had reaped and taken to his own use. The plaintiff agreed verbally with the defendant to let him certain land, without rent, and the defendant was to plough it, &c. ; and in lieu of rent, to allow the plaintiff a moiety of the crops. While the crops were on the ground, an appraisement of them was taken for both parties, and their value ascertained. The defendant contended that the agreement related to land, and should have been in writing. But Eyre, C. J., said that the special agreement was executed by the appraisement, and that the circumstance of the appraisement afforded clear proof that the plaintiff sold what the defendant agreed was his, and that the price being ascertained, brought this to the case of an action for goods sold and delivered, and that it was unnecessary to state a special agreement which

had been executed, where the action arises out of something collateral to it.

Lord Ellenborough, in delivering the judgment of the court in *Crosby* vs. *Wadsworth*, 6 *East* 602, remarks on the above case, that " the contract, if it had originally concerned an interest in land, after the agreed substitution of pecuniary value for specific produce, no longer did so ; it was originally an agreement to render what should have become a chattel, i. e., part of a severed crop in that shape, in lieu of rent, and, by a subsequent agreement, it was changed to money instead of a specific render of produce. So that one wonders rather how it should ever have been thought an interest in land, than that it should have been decided not to be so."

In *Frere* vs. *Hardenburgh*, 5 *Johns.* 272, the action was *indebitatus assumpsit,* for erecting buildings on the defendant's land, and for clearing the land, at the request of the defendant. It appeared that the plaintiff had entered upon the defendant's land, and made improvements without his knowledge, and the defendant afterwards made a parol promise to pay for them. Spencer, J., said that this was not a contract for the sale of any interest in lands, but it related to the labor only which had been bestowed on the land, under the denomination of improvements. And he asks, " was it ever supposed that a parol contract to pay for work to be done on land, or for what had been done, if at the instance and request of the promiser, was a void undertaking under the statute?" And in *Benedict* vs. *Beebe*, 11 *Johns.* 145, it was held that a promise by the defendant to pay for improvements made by the plaintiff on the land, was not void by the statute.

In accordance with these principles is the case of *Gray* vs. *Hill*, 1 *Ryan & Moody* 420. The parties made a verbal agreement that the plaintiff should repair certain premises, and that the defendant should assign to him a lease of them, which he held. The action was brought upon this promise, and the declaration contained a count for work and labor.

The defendant contended that the agreement was void, and that the plaintiff undertook the repairs under the promise of an assignment, which promise was not binding. Best, C. J., said that the plaintiff could not recover upon the special agreement; but that the plaintiff had expended the money for the benefit of the defendant, that the agreement was executed on the part of the plaintiff, and that the defendant was legally liable to remunerate him for what he had done.

The same principle, that the statute furnishes no defence, where a contract, void by the statute, has been executed, and nothing remains but to pay the consideration, has been settled in many other cases. *Holbrook* vs. *Armstrong*, 1 *Fairf.* 40, *and cases there cited; Hess* vs. *Fox*, 10 *Wend.* 436; *Linscott* vs. *McIntire*, 15 *Maine R.* 201.

It is very clear, therefore, upon the authorities, that although an action might not lie to enforce an agreement, or recover damages for the breach of it, still, when it has been executed, and one party has received the whole benefit of it, and refuses to account for what he has received, if the subject matter of the contract be not prohibited by law, he is liable to an action. In such case the law will raise a promise, and that promise is not within the statute. *Goodwin* vs. *Gilbert*, 9 *Mass.* 514. If the contract had not been rescinded, as to the mode in which the plaintiff should receive his compensation, and the defendant had appropriated the whole crop to his own use, we can conceive no ground on which the defendant could have resisted an action. And it would be extremely unjust if he could. One fourth part of the crops would belong to the plaintiff. The defendant would have received property that did not belong to him. No other promise to pay for them would be necessary than that contained in the original contract. And if, instead of one fourth part of the crops for his compensation, the parties had agreed that the defendant should pay him for his labor and the seed he had furnished, this undertaking would be no more within the statute, if the plaintiff permitted him to

receive the crops, than the original agreement would have been if executed.

We think, therefore, that the first, second and third exceptions cannot be sustained.

The fifth exception is, in substance, that although the defendant admitted that he took the whole of the crop, he said at the same time that he had a right to it; that all parts of the confession must be construed together, and, when so construed, do not prove his liability, or a promise to pay for it.

The general principle is well known, that the whole of a confession must be taken together, although what one says in his own favor may weigh but little with the jury. Thus, where one who is charged in assumpsit for money lent, acknowledges that he borrowed the money, but says that he repaid it, the whole statement is evidence to be weighed by the jury. 1 *Phill. on Evi.* 110; *Newman* vs. *Bradley,* 1 *Dall.* 240; *Smith* vs. *Jones,* 15 *Johns.* 229.

But it is to be remembered in this case, that the question is not as to the right of the defendant to take the crop, for the new agreement shows that he had that right. By the original agreement he had no right to the whole of the crop, but the plaintiff was entitled to one fourth of it. If the defendant had a right to take the whole, as he said he had, whence did he derive that right? Clearly, from the relinquishment by the plaintiff of *his* right. So far, then, is the assertion of a right to take the whole crop, from qualifying his admission that he took it, that it shows clearly the existence of the new agreement, for the right did not exist under the old one. Moreover, his assertion of a right is not evidence of it. The right is an inference of law, to be deduced from the facts, and his assertion can neither limit his liability, nor enlarge his powers. His assertion of a right, then, not only is not inconsistent with the plaintiff's claim, but corroborates the evidence of a new agreement, and does not at all neutralize the effect of the defendant's admission.

Moore v. Ross.

The last exception is, because the court did not instruct the jury, that if they found no evidence of any contract but to buy a growing crop, and that by parol, the plaintiff could not sustain the action, each count being founded on the sale of a standing or growing crop.

There is no evidence of any contract to buy a growing crop, but merely to pay for labor done and seed furnished, which, for the reasons before given, we think was not within the statute. There was nothing in the case, therefore, to render such an instruction relevant and pertinent to the case. But if it were proper to be given, the exception comes too late. It does not appear that the defendant moved the court so to instruct the jury at the trial. If a party desire an instruction of the court upon any particular point, or that the court should give certain views of the law to the jury, and the judge omit so to instruct the jury, the proper course is, for the party to move the court to instruct ; and if the court decline, he may then make the exception. But he should not lie by, until after the trial, and then take the exception when it is too late to supply the omission. The same rule is applicable, as in cases where a party omits to take an exception on account of any defect or omission in the testimony of his adversary. Such exception should be taken at the trial, or it will be considered as waived. *Wait* vs. *Maxwell*, 5 *Pick.* 217 ; *Gardner* vs. *Picket*, 19 *Wend.* 186 ; *Ford* vs. *Munroe*, 20 *Wend.* 210 ; *Leach* vs. *Woods*, 14 *Pick.* 461.

*Judgment on the verdict.*