## GOODRICH *v.* EASTERN RAILROAD.

A decision upon an agreed case, or an agreed statement of facts, is final to the extent to which it goes. If the parties desire the case to be amended or discharged, or the facts to be varied, steps must be taken to effect the object before the decision is announced.

The parties to a suit entered into this agreement: "That if the court shall be of opinion that the action can be maintained upon the facts reported by the commissioner, the damages shall be assessed by a jury or an auditor; but if otherwise, the plaintiffs shall become nonsuit." Upon this agreement the commissioner's report was transferred to the Supreme Court, who decided that the action could be maintained.—*Held,* that on going to the jury, after such decision, the only question was that of damages, and that the facts stated by the commissioner, on which the decision had been founded, were not open to be controverted.

Where a party desires further instructions to be given to a jury than those that are given, but does not move the court in regard to the matter, the verdict will not be set aside because the instructions are not given.

Before the court can be required to give particular instructions, there must be evidence, relevant and pertinent, on which to found them.

ASSUMPSIT, founded upon an agreement by the defendants to pay certain damages for filling with an embankment the plaintiffs' mill-pond, on the northerly side line of the defendants' bridge. The action was brought in the Common Pleas, the suit being dated January 27, 1852. At the September term, 1854, the parties entered into an agreement that the case should be examined by a commissioner, with a view to determine whether the plaintiffs were entitled to recover anything, it being "understood and agreed that the question as to the amount of the damages is reserved, and if it shall appear that the plaintiffs are entitled to recover damages, the amount shall be settled by the jury or by an auditor."

At the November term, 1856, the commissioner made his report, which was transferred to the Supreme Court upon this agreement: "That if the court shall be of opinion that the action can be maintained upon the facts

Goodrich *v.* Eastern Railroad.

reported by the commissioner, the damages shall be assessed by a jury or an auditor; but if otherwise, the plaintiffs shall become nonsuit."

Various deeds were set forth in the commissioner's report, which were examined by the court upon the above agreement. At the July term, 1858, the court decided that the action upon the facts found by the commissioner could be maintained for the actual damages which the plaintiffs had sustained, and the case stood for trial at the November term, 1858, of the Common Pleas. A few days before the commencement of the term the defendants furnished to the plaintiffs a statement in writing of the particulars in which they expected to change the result of the report of the commissioner at the trial before the jury, a copy of which statement was furnished to the court at the commencement of the trial, which was upon the first day of the term.

At the trial, the plaintiffs having called and examined upon the question of damages only, Benjamin Akerman, one of the witnesses examined by them before the commissioner, the defendants introduced a witness, for the purpose of changing the result of the report of the commissioner, according to his written statement aforesaid. The plaintiffs objected that the written statement had not been furnished at the term when the report was made, and that, by the terms of the agreement above stated, it should not now be received; and the court sustained the objection and excluded the written statement and the evidence offered by the defendants to sustain it; to which ruling the defendants excepted. Testimony upon both sides was introduced on the question of damages.

There was evidence tending to show that upon full tides the plaintiffs, if not stopped by the owners of the pond, could run their mill the whole time of the ebb of the tide, and until it turned, and that the plaintiffs used said water power from half to two thirds of the time; and there was

no evidence that the plaintiffs had ever been requested to stop more than twice, according to the tenor of the deed to Bowles, since the embankment was made. The plaintiffs had the title of Bowles.

There was evidence tending to show that the slope of said embankment, north of the northerly side line of the defendants' bridge, occupied a space equal only to one fifteenth of the whole embankment, but there was conflicting testimony on that point.

The defendants requested the court to instruct the jury that if the owners of the pond, who claim under Emery and others since the conveyance to the defendants, allowed the plaintiffs to use water power after the stone appears, equivalent to their share of what is displaced by the embankment and slope, that that fact is to be considered in connection with the claim for damages; and also, that if the plaintiffs have so conducted as to induce the defendants to suppose that the Portsmouth and Concord Railroad were authorized to receive payment for said embankment and slope, and under that belief the defendants paid the Concord and Portsmouth Railroad, such payment bars this action; which the court declined to do. There was no evidence in regard to the plaintiffs' conduct alluded to in the last instructions desired, except such as appears in this case.

The court instructed the jury that they might first inquire whether the plaintiffs had suffered any *actual* damage by reason of the cause complained of; and if not, or if such damages as they had thus sustained had been paid and satisfied before this suit was brought, (as the defendants contended they had been,) then their verdict should be for the defendants. But if they found that the plaintiffs had sustained actual damages from that cause, which had not been paid, or in any way satisfied, their verdict would be for the plaintiffs, for the amount of such damages; and that, as the cause of such damages was perma-

Goodrich *v.* Eastern Railroad.

manent, they might find for the plaintiffs for all damages they had sustained or would sustain by reason of said slope, so far as it was outside of the north side line of the defendants' bridge. To which instructions there was no objection.

The jury returned a verdict for the plaintiffs, for the sum of $352.08, which verdict the defendants moved the court to set aside, for supposed error in the ruling of the court in rejecting the written statements, and for not instructing the jury as requested by them.

And it was ordered that the questions of law arising upon the case be reserved and transferred to the Supreme Judicial Court for determination, and that the commissioner's report and the case transferred thereon, and all deeds referred to therein, might be referred to as part of this case.

One of the deeds referred to was from Emery and others, dated May 8, 1850, who were the owners of all the right which was conveyed to Peter Livius by the town of Portsmouth by vote of June 11, 1764, and were then in possession of the same, but who held subject to the plaintiffs' rights. This deed was to the defendants, and conveyed to them all the right of the grantors in the pond where the defendants' bridge then stood, "with the land under said bridge, and the right to fill up and make solid all the space under the bridge, together with the right of sloping, by bank-wall or otherwise, the northerly side of said embankment into said mill-pond." It was a quit-claim deed.

*Hatch*, for the plaintiffs.

*Hackett*, for the defendants.

EASTMAN, J. When this case was before us on a former occasion (37 N. H. 149,) it was held that the embankment

made by the defendants was such modification of the bridge as was intended by the parties in the release of damages from the plaintiffs in 1843; that the defendants, having proceeded to make the embankment upon the understanding expressed in the proviso, that the plaintiffs were not to be prejudiced in their claim for further damages occasioned by it, the plaintiffs could maintain the action for compensation on account of the damages; that the saving and excepting clause in the release from the plaintiffs to the Portsmouth and Concord Railroad was not such an exception or reservation as preserved to the plaintiffs their right of action for the damages occasioned by the embankment upon the premises released to the Portsmouth and Concord Railroad, but that the right of action remained to them for the actual damages occasioned by the running out of the embankment beyond the northerly side line of the bridge. *Sawyer*, J., in closing the opinion of the court delivered in the case, says: "For any diminution of the capacity of the pond by the material placed in it beyond this boundary—the northerly side line of the bridge—in making the embankment, and occasioning actual damages to the plaintiffs by impairing the use of their mill, the defendants are liable. This is to be determined upon an inquiry into the damages by the jury, or by an auditor, as provided in the case transferred."

That decision was made upon a commissioner's report of the facts, the case having been sent here upon the following agreement of the parties, viz.: "That if the court shall be of opinion that the action can be maintained upon the facts reported by the commissioner, the damages shall be assessed by a jury or an auditor; but if otherwise, the plaintiffs shall become nonsuit."

The effect of that agreement was to bind the parties to whatever decision the court might make upon the facts found by the commissioner. If the opinion of the court should be in favor of the defendants, then the plaintiffs

were to become nonsuit; but if we arrived at the conclusion that the action could be sustained, then the damages were to be assessed by a jury or an auditor. To that extent the case was to be determined; and, in any future proceedings in the action, the parties could not go behind the decision of the court founded upon that agreement. If, upon the transfer from the Common Pleas, it had been found that, through some accident, mistake, or misapprehension, the case or commissioner's report embraced matters which did not exist, or did not contain facts which did exist, and which were material to a correct determination of the rights of the parties, a motion should have been made to discharge the case; and it would have been in the power of the court to have granted it. The practice, however, has not been to discharge an agreed case, except for some such valid reason, and where it is apparent that the parties have fallen into error in relation to the facts or their bearing. *Heywood* v. *Wingate*, 14 N. H. 73; *Richardson* v. *Huggins*, 3 Foster 106, 119. If an agreed case is not discharged, judgment always follows according to the opinion of the court. *Osgood* v. *Blake*, 21 N. H. (1 Fost.) 550, 570; *Henry* v. *Sargent*, 13 N. H. 342.

And such is the practice upon the transfer of auditors' reports, upon the agreement of the parties to abide by the decision of the court. The right of trial by jury is waived by such agreement, and judgment follows the decision. *Beebe* v. *Dudley*, 30 N. H. (10 Fost.) 34; *King* v. *Hutchins*, 26 N. H. (6 Fost.) 139.

In accordance with this rule judgment was also ordered on a commissioner's report in a recent case. *Foster* v. *Hill*, 36 N. H. (5 Fogg) 526.

By the act of 1852, authorizing the appointment of commissioners in civil actions, it is provided that when a report is made by a commissioner, the court shall render such judgment as is warranted by the facts reported,

unless either of the parties shall, at the term at which the report is made, elect to try the case by a jury. Comp. Stat., ch. 181, sec. 33. The statute would seem to be imperative that the election shall be made at the term at which the report comes in. In this respect it differs from the provisions in regard to a trial after an auditor's report. In these provisions no time is fixed in which an election shall be made. Rev. Stat., ch. 189, sec. 5.

In view of the statute, and the effect that should be given to the decision of the court, which was made upon the agreement of the parties, we think that the court below were right in holding that the commissioner's report was not then open to contradiction. The deeds had been examined and a construction put upon them, and the law of the case had been settled, and there was nothing left to be done but for the damages to be assessed according to the agreement. The court had decided that, for the actual damages caused by that portion of the embankment which was north of the northerly side line of the bridge, the defendants were liable; and what those damages were was the only question open for trial before the jury.

The remaining questions in the case arise upon the refusal of the court to instruct the jury as requested by the defendants. No exceptions were taken to the instructions that were given, and if the defendants had desired further instructions, they should have called for them. Failing to do it, the verdict cannot be disturbed because they were not given. *Moore* v. *Ross*, 11 N. H. 547; *Leach* v. *Woods*, 14 Pick. 461.

The instructions asked for, arising out of the facts connected with the deed from Emery and others, were properly refused. The plaintiffs had no connection with that title, and no rights growing out of it which they could enforce. So far as their legal rights were concerned, the matter was

Goodrich *v.* Eastern Railroad.

*res inter alios*, and no defence to their claim. They had no power to compel the continuance of any benefits which they received through that title.

And we think that the other instruction asked for was also properly declined. Before the court can be required to give particular instructions, there must be evidence, relevant and pertinent, upon which to found them. This instruction, asked for by the defendants, went upon the ground that the conduct of the plaintiffs, in receiving the three hundred dollars, was such as to be a fraud upon the defendants. But we do not discover any evidence of fraud in the facts reported. This three hundred dollars was received by the plaintiffs for what was done under the bridge, within the limits of their deed, and not for the embankment beyond the northerly side line of the bridge. They gave no power to extend the embankment into the pond beyond that line, and the case does not find that they knew that it was to be so extended. It was not their deed that gave "the right of sloping, by bank-wall or otherwise, the northern side of the embankment into the mill-pond," but the subsequent deeds to the defendants from the Portsmouth and Concord Railroad, and from Emery and others.

The verdict, compared with the amounts received for other rights conveyed by the plaintiffs, would seem to be disproportionately large; but we cannot find in the case any good ground for setting it aside, and judgment upon it must consequently be ordered.

*Judgment on the verdict.*