Robert BREEST

v.

**Everett I. PERRIN, Warden, New Hampshire State Prison.**

Frederick J. MARTINEAU

v.

**Richard T. McCARTHY, Chairman, NH Board of Parole; NH Board of Parole.**

Civ. Nos. 79–266–D, 79–302–D.

United States District Court,
D. New Hampshire.

Aug. 22, 1980.

Robert Breest, Frederick J. Martineau, pro se.

Richard B. Michaud, Concord, N. H., for defendants.

OPINION

DEVINE, Chief Judge.

These habeas corpus cases, consolidated per our Order of October 4, 1979, present the common question whether the holding in *Dunn v. Perrin*, 570 F.2d 21 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978)—that New Hampshire's former reasonable doubt jury instruction is constitutionally invalid—applies retroactively so as to require reversal of petitioners' convictions and new trials.

■ Petitioner Robert Breest was convicted of first degree murder on March 22, 1973, following a jury trial. Petitioner Frederick J. Martineau was similarly convicted of first degree murder on November 14, 1959, following a jury trial. Both petitioners have appealed unsuccessfully to the New Hampshire Supreme Court issues other than that raised herein. *See State v. Breest*, 116 N.H. 734, 367 A.2d 1320 (1976); *State v. Nelson [Martineau]*, 103 N.H. 478, 175 A.2d 814 (1961), *cert. denied*, 369 U.S. 881, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962). Petitioners' motions for new trials (*State v. Breest*, 118 N.H. 416, 387 A.2d 643 (1978), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *State v. Nelson*, 105 N.H. 184, 196 A.2d 52 (1963), *cert. denied*, 377 U.S. 1001, 84 S.Ct. 1936, 12 L.Ed.2d 1050 (1964), as well as their attempts at habeas corpus relief on both state and federal levels have met with an equal lack of success. *See Breest v. Helgemoe*, 117 N.H. 40, 369 A.2d 612 (1977) (re parole eligibility); *Breest v. Helgemoe*, 579 F.2d 95 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978); *Breest v. Perrin*, 479 F.Supp. 495 (D.N.H.1979) (petition denied), *aff'd* 624 F.2d 1112 (1st Cir., 1980); *Nelson v. Hancock*, 210 F.Supp. 60 (D.N.H.1962) (denied for failure to exhaust state remedies); *Nelson v. Hancock*, 239 F.Supp. 857 (D.N.H.1965) (finding for petitioners), *rev'd*

363 F.2d 249 (1st Cir. 1966), *cert. denied*, 386 U.S. 984, 87 S.Ct. 1292, 18 L.Ed.2d 234 (1967). Petitioner Martineau was successful, however, in obtaining a change in his sentence from death to life imprisonment, and was eventually paroled. *See State v. Martineau*, 112 N.H. 278, 293 A.2d 766 (1972), and *State ex rel. Thomson v. State Board of Parole*, 115 N.H. 414, 342 A.2d 634 (1975).[1]

I.

Respondents here concede that the instructions to the respective juries in petitioners' cases are substantially similar to those at issue in *Dunn, supra*, 570 F.2d at 23 n.1–a fact which we have confirmed from our own examination of the trial transcripts in these cases. (Breest, trial transcript, Vol. V at 1671–72; Martineau, trial transcript, Vol. XIV at 77–80.) In *Dunn* the First Circuit concluded that the cumulative effect of three errors that are contained in each of these charges was "to obfuscate one of the 'essential elements of due process and fair treatment'": proof beyond a reasonable doubt. *Id.* at 25, *quoting In re Winship*, 397 U.S. 358, 359 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also Tsoumas v. New Hampshire*, 472 F.Supp. 1134 (D.N.H. 1979) (as to petitioner Wentworth).

Nevertheless, respondents argue that the holding in *Dunn* has no retroactive application in these cases. The United States Supreme Court has stated that " '[w]here the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth–finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect' ". *Hankerson v. North Carolina*, 432 U.S. 233, 243, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 306 (1977), *quoting Ivan V. v. City of New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d

---

1. That petitioner Martineau is now on parole does not, of course, affect this court's jurisdiction to consider his habeas petition alleging that he is "in custody in violation of the Constitution of the United States". *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

659 (1974).[2] In *Hankerson* the Court determined under the above standard that its holding in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), ought to be given complete retroactive effect in a case where the jury was instructed that in order for a defendant charged with second–degree murder to excuse his act altogether, he "must prove not beyond a reasonable doubt but simply to your satisfaction that he acted in self–defense".[3] Respondents contend that the *Dunn* decision does not similarly qualify for complete retroactive application under the above formulation, noting that "[u]nlike the substantial error in Hankerson where the burden of proof was squarely placed upon the defendant, here, the Petitioner carried no burden of proof whatsoever." (Respondent Perrin's Memorandum of Law at 3.)[4] As a consequence, they argue that this Court should give controlling weight to the State's reliance on the old instruction and the impact on the administration of justice. *See Brown v. Louisiana*, —— U.S. ——, —— –——, 100 S.Ct. 2214, 2219–20, 65 L.Ed.2d 159 (1980). In another case we might well be faced with resolving this troubling inquiry. In the context of disposition of the cases at bar, however, it is unnecessary to determine the retroactivity of *Dunn*, for the State of New Hampshire has effectively insulated petitioners' convictions via enforcement of its long–standing rule that failure to object and except at trial to a jury instruction constitutes a waiver of any claim of error.

## II.

■ As noted in New Hampshire Supreme Court's *per curiam* opinion that disposed of the habeas corpus petitions of Breest and Martineau raising the same issue presented here, "[i]n this State, unlike the federal rule permitting objections to suffice, we have required for decades that an objection be made and an exception taken in the event of an adverse ruling by the trial judge. This practice and custom have a statutory basis in RSA 490:10 and RSA 491:17." *Martineau v. Perrin*, 119 N.H. ——, 404 A.2d 1100, 1102 (1979). These statutes date back to 1901 and 1855 respectively, and a number of cases handed down in this state have relied upon this practice and custom as grounds for decision. Included among the latter are the following cases which deal specifically with jury instruction issues: *Moore v. Ross*, 11 N.H. 547, 557 (1841) ("If a party desire an instruction of the court upon any particular point, or that the court should give certain views of the law to the jury, and the judge omit so as to instruct the jury, the proper course is for the party to move the court to instruct, and if the court decline, he may then make the exception. But he should not lie by, until after the trial, and then take the exception when it is too late to supply the omission"); *Goodrich v. Eastern Railroad*, 38 N.H. 390, 396 (1859) (verdict cannot be disturbed where further requested instructions were not given, where defendants failed to except to those that were given); *State v. Isabelle*, 80 N.H. 191, 192,

2. In *Ivan V.*, which like *Winship* involved an adjudication of delinquency based on a "preponderance of the evidence standard of proof", the Court determined that the holding of *Winship* should be applied retroactively so as to require reversal of the outcome of a juvenile proceeding that took place before *Winship* was decided.

3. In *Mullaney* the Court found that *Winship* applied to Maine's requirement that a defendant charged with murder prove that he acted "in the heat of passion or sudden provocation" in order to reduce the homicide to manslaughter. *Cf. Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (holding that it was constitutionally permissible for New York's murder statute to place upon defendant the burden of proving by a preponderance of the evidence, so as to reduce the crime to the *separately defined* offense of manslaughter, the affirmative defense that he acted "under the influence of extreme emotional disturbance for which there was a reasonable explanation").

4. Note, however, the First Circuit's observations in *Dunn* that the first two of the three errors it identified in New Hampshire's old jury instruction defining reasonable doubt did put petitioners to some task of proof. 570 F.2d at 21–22.

115 A. 806, 807–08 (1921) (applying in a criminal context the holding relative to instructions in a civil case); *Coos Lumber Company v. Builders Lumber and Supply Co.*, 105 N.H. 323, 326, 199 A.2d 545, 547 (1964); *State v. Meloon*, 116 N.H. 669, 670, 366 A.2d 1176, 1176–77 (1976), *habeas granted on other grounds*, 564 F.2d 602 (1st Cir. 1977), *cert. denied*, 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978).

With respect to the cases at bar, finding that neither *Breest* nor *Martineau* had objected to or excepted to the reasonable doubt charges given the juries in their respective cases, the New Hampshire Supreme Court ruled that petitioners had thus failed to preserve the issue presented for subsequent appeal and post-conviction relief.[5] In this light, the Court dismissed the petitions. Petitioners offer several grounds why review of their cases here should not be precluded by the above holding of the New Hampshire Supreme Court.

■ First, petitioners argue that this situation falls within a recognized exception to the general rule set forth above, citing

*inter alia, Barton v. City of Manchester*, 110 N.H. 494, 272 A.2d 612 (1970), and cases cited therein. Alternatively, petitioner Breest argues that the remarks made by his counsel to the trial judge constitute an objection sufficient to comply with such rule. In its *per curiam* opinion to these cases, the Supreme Court of New Hampshire rejected both these contentions, *Martineau v. Perrin, supra*, 404 A.2d at 1102. As these contentions raise matters purely of state law, we are not free to overturn rulings thereon by the highest court of the state unless it can be shown that that court applied such law arbitrarily or in a less than even–handed manner in violation of the Fourteenth Amendment.[6] A claim to that effect was raised by petitioners in *Grace v. Butterworth*, No. 79–1422, slip op. (1st Cir., June 27, 1980), who complained that the Massachusetts Supreme Judicial Court had applied its holding in *Commonwealth v. Ferreira*, 373 Mass. 116, 364 N.E.2d 1264 (1977) (finding constitutionally inadequate the definition of 'beyond a reasonable doubt' contained in the trial court's jury instructions) retroactively so as to require reversal of the convictions

**5.** Petitioner Breest's petition reached the New Hampshire Supreme Court by way of the Merrimack County Superior Court's reserving and transferring of questions of law raised by Breest's exception to its denial of his petition. Petitioner Martineau's petition was filed directly to the New Hampshire Supreme Court apparently at the behest of the Office of the Attorney General of New Hampshire.

**6.** It has long been established that "state courts are the ultimate expositors of state law" and that the federal courts are bound by the interpretations thereof of such courts absent extreme circumstances. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Pagan Torres v. Negron Ramos*, 578 F.2d 11, 14 (1st Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978); *Salemme v. Ristaino*, 587 F.2d 81, 87 (1st Cir. 1978).

Parenthetically, however, we note our agreement with the New Hampshire Supreme Court as to its resolution of the above two state law contentions of petitioners. As to the first of these, we find the instant cases to be factually distinguishable from those cited by petitioners: while the parties at their initial appearance before the New Hampshire Supreme Court did appear to concede the record in order to present the transferred question as to the retro-

activity of *Dunn* (as was the case in *Sheehan v. Company*, 83 N.H. 542, 145 A. 139 [1929]), and while it is perhaps true that any efforts by petitioners to object to the reasonable doubt jury instructions would have been futile given the state of the law at the time of their trials (as was the case with the evidentiary issue raised in *State v. Nelson*, 105 N.H. 184, 196 A.2d 52 [1963]), this case represents the first occasion where the Court has had the opportunity to exercise the option afforded it in *Hankerson, supra*, 432 U.S. at 244 n.8, 97 S.Ct. at 2345, to be discussed later in this Opinion. And as to the second contention, it is obvious from the face of the remarks made by Breest's counsel to the trial court that counsel was not excepting to the court's instructions:

> Mr. Leonard: Judge, as far as I am concerned, I have no objection to anything you said. Of course, if the Supreme Court changes their mind, I mean, the Supreme Court next year, I might be able to disagree, but I can't now.

Breest Tr., Volume V, at 1683–84. It is noteworthy that other than specific requests as to first degree murder and Breest's failure to testify, counsel had requested "routine instructions." (*Id.* at 1597.)

of defendants in another case (*Commonwealth v. Garcia,* —— Mass. ——, 399 N.E.2d 460 [1980]) despite those defendants' failure to object at trial while denying such application to petitioners based on their similar failure to object. *See Commonwealth v. Grace,* —— Mass. ——, 381 N.E.2d 139 (1978). We see no basis upon which petitioners in the instant cases could make out such a claim. As noted in footnote 6 above, those cases cited by petitioners where the New Hampshire Supreme Court has chosen to overlook an appellant's failure to comply with the state's long-standing rule as to objections and exceptions are factually distinguishable from the case at bar. Indeed, these cases represent the first instance where the New Hampshire Supreme Court has been faced with deciding, in accordance with *Hankerson, supra,* 432 U.S. at 244 n.8, 97 S.Ct. at 2345, whether a habeas corpus petitioner's failure to comply with the State's long-standing contemporaneous objection and exception rule should insulate a past conviction from retroactive application of the holding in *Dunn.* In the only other case presented to that court where such claims were made, *State v. Wentworth,* 118 N.H. 832, 395 A.2d 858 (1978), counsel had taken timely exception to the trial court's charge on reasonable doubt. (*Wentworth v. Samaha,* Civil No. 79–5 [D.N.H., Jan. 4, 1979] [trial transcript, Vol. II at 106]).[7]

█ In light of the validity of the New Hampshire Supreme Court's decision that petitioners have failed to comply with this State's contemporaneous objection and exception rule, the central issue of federal law presented by these cases is whether that non-compliance represents "an independent and adequate state procedural ground that bars the federal courts from addressing the issue [here, of retroactivity] on habeas corpus". *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 148, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979). In a

footnote to its opinion in *Hankerson, supra,* wherein the Court held that its decision in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), was to be given complete retroactive effect, the Supreme Court of the United States made the following comment in response to concerns (similar to those expressed here) regarding the integrity of past convictions:

> Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. *The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. See, e. g.,* Fed.Rule Crim.Proc. 30.

432 U.S. at 244 n.8, 97 S.Ct. at 2345 (emphasis added). Six days later, the Supreme Court handed down its opinion in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Therein, the Court held that the rule of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), barring federal habeas review absent a showing of "cause" and "prejudice" attendant to a state procedural waiver shall be applied to a waived objection to the admission of a confession at trial as opposed to the holding in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)–that a state procedural bar arising from a failure to appeal would not prevent federal habeas

7. On habeas in that case we held, *citing Hancock v. White,* 378 F.2d 479 (1st Cir. 1967) that our determination as to the applicability of *Dunn* to *Wentworth's* case did not reach the question of *Dunn's* bearing upon cases for

which ordinary avenues of appeal had already been exhausted. *Tsoumas, supra,* 472 F.Supp. at 1137. *See also United States v. Eaddy,* 595 F.2d 341, 343 (6th Cir. 1979).

corpus review unless a "deliberate bypass" of state remedies had occurred. To determine the effect of *Hankerson* and *Wainwright* upon the cases at bar, we must resolve the following questions. First, should the application here of New Hampshire's contemporaneous objection and exception rule be governed by the standard set forth in *Francis* or by that adopted in *Fay*? And second, if the *Francis* standard applies, is change of law sufficient cause for failure to object given petitioners' argument that any effort along that line at the time of their trials would have been futile? To date, neither the Supreme Court of the United States nor the First Circuit have answered these questions. *See Grace v. Butterworth*, No. 79–1422, slip op. at 6 (1st Cir., Feb. 5, 1980). However, these questions were squarely addressed by an *en banc* panel of the Fourth Circuit in its recent opinion *Cole v. Stevenson*, 620 F.2d 1055 (1980), wherein the petitioner alleged that the state trial court improperly instructed the jury by placing the burden on the defendant to prove self defense and an absence of malice in violation of the due process clause of the Fourteenth Amendment as construed in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Despite petitioner Cole's failure to comply with North Carolina's procedural requirements as to objecting to jury instructions, the district court had granted his petition based on the *Hankerson* holding as to *Mullaney's* complete retroactivity and upon its ruling that lack of perception at that time by the bar or the bench of the presence of a constitutional violation established sufficient "cause" for Cole's procedural default. *Cole v. Stevenson*, 447 F.Supp. 1268 (E.D.N.C.1978). A six-judge majority of the Fourth Circuit panel in *Cole* reversed and in so doing provided the following answers to the above

two inquiries. First, it held that the *Wainwright* "cause and prejudice" test (as opposed to *Fay's* "deliberate bypass" standard) applied through *Hankerson* footnote 8 to the procedural bars in that case. Second, after a thorough analysis of the background against which the United States Supreme Court decided the *Hankerson* case, the majority found to be without merit the argument that subsequent change of law and consequent futility to object at the required prior times constituted sufficient "cause" for failure to preserve the issue. It is obvious from the applications of *Winship* in *Mullaney* and *Dunn* that the situations presented therein are closely analogous and should be viewed under the same analytical framework. In this light, and as we find the logic and reasoning of the Fourth Circuit majority in *Cole* to be compelling and clearly set forth in its opinion, we need not repeat that analysis here and proceed to resolution of the cases at bar in accordance with that majority's conclusions.[8]

At the outset we note, as did the Fourth Circuit majority in *Cole, supra*, 620 F.2d at 1062 n.7, that petitioners must satisfy both the "cause" and "prejudice" prongs of the *Wainwright* standard in order to avoid the bar presented to our review of their cases on habeas by operation of New Hampshire's contemporaneous objection and exception rule. *See also Ramsey v. United States*, 448 F.Supp. 1264, 1273 (N.D.Ill.1978); *Barrier v. Egeler*, 583 F.2d 515, 525 (6th Cir.) (dissenting opinion), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978). Petitioners submit that the "cause" for their failure to comply with that rule at their trials by objecting and excepting to the courts' definitions of reasonable doubt lies in "error, mistake and misfortune". Although the Massachusetts counsel who represented petitioners at their trials might have had

8. We recognize, of course, that some circuits are not in agreement with the Fourth Circuit as to its resolution on the meaning of "cause". *See, e. g., Tyler v. Phelps*, 622 F.2d 172 (5th Cir. 1980), and *Collins v. Auger*, 577 F.2d 1107, 1110 n.2 (8th Cir. 1978) (dictum). However, we believe the sound reasoning of the Fourth Circuit majority in *Cole* will cause some re-ex-

amination of contrary opinions in other circuits. In this regard, *see Isaac v. Engle*, No. 78–3488 (6th Cir., Mar. 24, 1980) (vacating and ordering a rehearing *en banc* as to the earlier slip opinion handed down by a three-judge panel of that circuit on February 8, 1980).

some inkling that the "strong and abiding conviction" language contained in the charges "was the exact inverse of what it should have been" (*Dunn, supra,* 570 F.2d at 24) by comparing it to these same words as they were properly set forth by Chief Justice Shaw in the oft-cited case of *Commonwealth v. Webster,* 59 Mass. 295, 320 (1850), we think it far more likely that both New Hampshire and Massachusetts counsel's failure to object to same was based on their perceptions as to the futility of doing so. *See* October 2, 1979, Memorandum of Martineau at 20, noting that "[a]t the trial, counsel for Petitioner was well aware of the state of the law at the time and knew full well that an objection would be futile". The remarks of Attorney Leonard to the trial court in Breest's case are particularly revealing in this respect. *See* footnote 6 above. Consistent with the Fourth Circuit majority's ruling in *Cole* that such futility does not represent adequate "cause" for failure to comply with a contemporaneous objection and exception rule, we find that both petitioners here have failed to satisfy the showing required under the first prong of the *Wainwright* "cause and prejudice" standard.

Even if the Fourth Circuit reading of "cause" that we have here adopted were incorrect, we find our review of petitioners' cases on habeas barred by the absence of "prejudice" to them attendant to the state procedural waiver. For reasons that will be set forth more fully in Part III of this Opinion, we find from our review of the trial transcript in petitioner Breest's case that the evidence supportive of the guilty verdict is so overwhelming as to be harmless beyond a reasonable doubt. *See Wainwright, supra,* 433 U.S. at 97–99, 97 S.Ct. at 2511–2513 (White, J., concurring in the judgment).

With regard to the absence of "prejudice" in Martineau's case, we note the convincing analysis of the court in *Robertson v. Warden, Maryland Penitentiary, Collins,* 466 F.Supp. 262, 268–72 (D.Md.1979) to the effect that the presence of evidence of guilt "substantial" to a sufficient degree may negate any possibility of such prejudice.

From our review of the fourteen-volume transcript in petitioner Martineau's case, we find such substantial evidence of guilt. As the New Hampshire Supreme Court's summary of the trial in *State v. Nelson, supra,* 103 N.H. at 480–83, 175 A.2d at 816–18, accurately sets forth the evidence upon which we base our opinion, we do not repeat that recitation here but refer to that opinion. Suffice it to say that as in Breest's case, the State in Martineau's case presented a wealth of circumstantial evidence pointing strongly toward guilt. (As will be noted in Part III of this Opinion, the addition in Breest's case of the testimony of witness Carita recounting Breest's confession had the effect of making the evidence there compelling.)

For all the above reasons, we find that petitioners have failed to show sufficient "cause and prejudice" so as to avoid the insulating effect upon their convictions attendant to this State's enforcement of its long-standing rule requiring contemporaneous objections and exceptions. *Cf. Tsoumas v. New Hampshire,* 611 F.2d 412, 412 n.1 (1st Cir. 1980). Their petitions for habeas corpus are thus dismissed on that ground.

### III.

■ In closing, we note that even if the above state procedural bar did not effectively insulate these cases from our review, and even if we were to apply the holding in *Dunn* retroactively to them, we would still deny petitioner Breest the relief he seeks on the ground that the evidence of his guilt is so overwhelming as to be harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968); *United States v. Christian,* 571 F.2d 64, 69–70 (1st Cir. 1978). From our reading of the recent opinion in *Breest v. Perrin,* 624 F.2d 1112, at 1116 (1st Cir., 1980), we believe the First Circuit itself has so concluded and refer to that court's recitation of the relevant evidence as the basis for our own opinion in this regard. We note that by so finding, we rule implicitly (in answer to the question left open in *Dunn, supra,*

570 F.2d at 25) that the constitutional error contained in New Hampshire's old jury instruction on reasonable doubt can be rendered harmless by overwhelming evidence of guilt.[9] As noted in *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), "not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." Thus, while we cannot say that the erroneous portions of Breest's jury charge on reasonable doubt were cured by an otherwise proper charge, we find in light of the overwhelming evidence of guilt they did not "so infect[ ] the entire trial that the resulting conviction violates due process". *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

SO ORDERED.

**9.** *See Bumpus v. Gunter,* 452 F.Supp. 1060 at 1061 (D.Mass.1980), *appeal docketed,* C. 80– 1114 (1st Cir., Feb. 14, 1980).