Charles H. ROY, Petitioner-Appellant,

v.

Frank A. HALL et al.,
Respondents-Appellees.

No. 75–1021.

United States Court of Appeals,
First Circuit.

Argued April 9, 1975.

Decided, Aug. 11, 1975.

David Sonenshein, Boston, Mass., for appellant.

Barbara A. H. Smith, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Div., were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant was tried before a jury and convicted of arson and involuntary manslaughter. After the Massachusetts Appeals Court affirmed the conviction, *Commonwealth v. Roy,* 1974 Mass.App. Adv.Sheets 199, 307 N.E.2d 851, and the Supreme Judicial Court denied further review, he filed a petition for federal habeas corpus. Appeal is now taken from the district court's denial of the writ.

On January 8, 1972, appellant's homosexual lover and roommate died in a fire at the apartment which they shared. When police officer John Fallon arrived on the scene, he was directed to appellant, who was standing nearby. Fallon asked, "Do you live down there?", and appellant responded affirmatively. Fallon's testimony at both the suppression hearing and trial was that he then asked what had happened and appellant responded, "We were fighting and throwing things around, so I set the curtains on fire." That this first statement, made before appellant was taken into custody, was properly admitted at trial is not here disputed.

After appellant was arrested and taken to the police station he was questioned by Lloyd Langill, a fireman attached to the arson squad. Langill testified at the trial: "He told me that he had an argument with his roommate, that he had struck him, and that the roommate had left the building and that he had set fire in the kitchen to the curtains with a match." The Appeals Court ruled that this second statement should not have been admitted, since Langill's testimony at the hearing on suppression indicated that appellant's *Miranda*[1] warning was incomplete in that it did not advise of the right to have counsel appointed. The court found this error to be harmless, however, since it viewed the statement as merely cumulative.

Sergeant Francis Whalen of the homicide division testified that appellant made a third statement to him. A poor-quality tape recording of the conversation between appellant and Whalen was made, and at the hearing the tape was played. Whalen also supplied a transcript of the tape which contained the following exchanges:

"Q. Anything else you want to tell me about the fire?

A. I did it, I started it.

Q. You started it?

A. Yes, I started it.

Q. What was your intention when you started it?

A. Don't ask me, don't ask me."

The tape continued, but the trial judge suppressed the remainder of the statement, apparently on the ground that appellant had indicated that he did not wish the questioning to continue. When Whalen testified at trial, however, he did not read the portion of the transcript reproduced above. He read only statements relating generally to appellant's relationship to his roommate and the nature of their fight on the night of the fire. It is possible that the jury heard appellant's confession when excerpts from the tape were played as part of the cross-examination of Whalen, but nothing definitive can be said on this issue since the trial transcript does not indicate which portions of the tape were played.

Appellant argues that the second statement, which was made to Langill and was the subject of his testimony at trial should have been suppressed.[2] The Massachusetts Appeals Court found a *Miranda* violation in the admission of the testimony, but nonetheless affirmed the convictions on the theory that the error was harmless. The court held that since no significant details were contained in the Langill statement that were not in the other two statements, that statement was entirely cumulative and its admis-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Several arguments rejected by the district court have not been renewed.

sion was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The federal district court took a similar position in denying habeas corpus.

After examining the trial transcript, we are unable to agree that this is a proper case for the application of the harmless error doctrine. In ruling that there was no reasonable possibility that the introduction of Langill's testimony contributed to appellant's conviction, both the Appeals Court and the district court apparently viewed the trial as one at which testimony was presented attributing three directly inculpatory statements to appellant. If such had been the case, we also might conclude that a third statement pales into insignificance after the introduction of two others. Neither court noted, however, that there is no assurance that the most incriminating portion of the third statement (to Whalen) was ever put before the jury. Each opinion's statement of facts reports the substance of the third statement as testified to by Whalen at the pretrial hearing, but Whalen's recitation at trial ended before he reached appellant's confession that he had started the fire. The Commonwealth has called our attention to the fact that the recorded conversation between Whalen and appellant was itself played, in part, for the jury. While it is thus possible that the jurors heard the confession,[3] the record does not establish what portions of the tape were played at trial. We have no choice but to assume, for present purposes, that the presentation of the third statement at trial was limited to Whalen's recital.

■ The evidence which the Commonwealth presented against appellant, exclusive of the portion of the third statement not read by Whalen at trial, was far from the "overwhelming evidence of

guilt" which can support the conclusion that constitutional error was harmless. *See Milton v. Wainright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The only evidence tending to show that the fire was attributable to the commission of a crime by appellant rather than to an accident or other cause consisted of the testimony of Fallon, Langill and Whalen, each of whom purported to repeat an incriminating statement made by appellant. The relevant portion of the third statement establishes only the general nature of appellant's relationship with the deceased and the fact that they had quarreled, apparently due to sexual jealousy, on the night of the fight. While the first statement as reported by Fallon was unequivocal and damning, the jury was by no means bound to accept the testimony as accurate. Appellant took the witness stand and denied that he started the fire, and also stated that he did not recall making any of the incriminating statements attributed to him. Defense counsel argued that it was possible either that Fallon misunderstood the few words spoken by appellant or that to consider the words a confession of guilt, even if they were correctly reported, involved a misinterpretation. Appellant testified that he had been drinking heavily on the night of the fire, and his description of his conduct during and after the fire would support the conclusion that he was confused and panicky.

Given these possible grounds for discounting Fallon's testimony or drawing conclusions from it inconsistent with the prosecution's theory of the case, the corroboration provided by the statement to Langill cannot be regarded as insignificant. It added concreteness in four respects: the fight resulted in appellant's being struck; the fire was started in the

---

3. If forced to resolve the issue, however, we would reach this conclusion only with some trepidation. The tape was played as part of the cross-examination of Whalen, and it seems improbable that defense counsel's selections would have included his client's admission of

guilt. Moreover, the fact that the tape was of such poor quality that the court reporter could not transcribe the portion played in court suggests that jurors, too, might have had difficulty in understanding it.

kitchen; the instrumentality was a match; and the deed was done with some deliberation, i. e., after the roommate had supposedly left the building. There is undoubtedly "a reasonable possibility that the evidence complained of might have contributed to the conviction," *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Chapman v. California, supra,* 386 U.S. at 24, 87 S.Ct. 824, 17 L.Ed.2d 705; *United States ex rel. Macon v. Yeager,* 476 F.2d 613 (3d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973). Harmless error is a doctrine of dangerous elasticity. It poses a constant challenge to the judgment and restraint of reviewing courts. We have found no case where error affecting the most complete and detailed confession among those which constitute almost the entire prosecution case has been considered harmless, and we decline to expand the doctrine to reach this case.

This, however, does not end our consideration, for we also disagree with the Appeals Court's determination that appellant's second statement (to Langill) was improperly admitted. The Appeals Court's ruling on the admissibility of the second statement is short enough to be easily reproduced here in full:

"With respect to the statements made to Officer Langill of the arson squad, however, we must agree with the defendant. The judge's finding that 'the defendant was completely advised of his rights under the *Miranda* case and understood those rights' lacks support in the record before us.[1] As the *Miranda* case makes clear, a valid waiver cannot be presumed from a silent record. *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, citing *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). However, in the circumstances of this case, for reasons which we discuss later, we are not prepared to say that the judge's ruling constituted reversible error."

The court's supporting footnote reads:

"[1] It would appear from Officer Langill's testimony at the pre-trial hearing that the *Miranda* warning was not fully administered in that the warning as to the right to have counsel appointed was omitted. Officer Langill testified at trial that he advised the defendant of all the *Miranda* rights, including the right to have counsel appointed. Our consideration of the adequacy of the warnings must be limited to the evidence adduced at the pre-trial hearing."

The ruling by the trial judge which the Appeals Court found to lack support in the record was one made after the two-day pre-trial hearing had been completed. The court stated:

"I do find that after Officer Fallon arrested [Roy], he did give him the *Miranda* warning, so-called, and that at the police station Firefighter Langill, of the Boston Fire Department Arson Squad, again gave him the *Miranda* warning and again questioned him."

██ Resting as it does upon findings that adequate warnings were given by both Fallon and Langill, this ruling on the admissibility of the second statement could seemingly have been rejected by the Appeals Court as lacking support in the record only if the findings as to both sets of warnings were unfounded. Perhaps because of its view of harmless error, the Appeals Court in its decision reviewed the ruling only with regard to the warnings allegedly given by Langill, nowhere indicating what legal effect should in its view be given to the Fallon warnings. At the pre-trial hearing on suppression, Fallon had testified that he read appellant his *Miranda* rights off the standard card after taking him to the District 4 police station. The testimony also indicated that appellant was then questioned by Langill in Fallon's presence, still within the District 4 station and without any significant lapse of time. The trial court's finding on the Fallon warning was explicit and based upon the uncontradicted testimony adduced at the hearing. If the Appeals Court be considered to have addressed this issue, the implicit legal ruling is that

only the officer giving a warning may testify to an accused's statement or that any delay between warning and statement vitiates the warning. Such a ruling stretches our own reading of *Miranda*. *See Miller v. United States*, 396 F.2d 492, 495–96 (8th Cir. 1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969); *Tucker v. United States*, 375 F.2d 363 (8th Cir.), *cert. denied*, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967). We therefore reject it, if we have the right to do so.[4]

The novel question facing us is whether we are bound by the state court's subsidiary legal conclusion that the second confession was inadmissible, when, because of our view that the error was not harmless, the result would be to disagree with the state court's final conclusion. We are, of course, well within the prerogatives of a federal court in coming to our own conclusion on harmless error, since—assuming that the second confession was invalid—our judgment that there was a reasonable possibility that the confession could have contributed to conviction would require us to direct the district court to issue the writ to vindicate appellant's rights secured by the federal constitution. *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Developments in the Law—Federal Habeas Corpus*, 83 Harv.L.Rev. 1038, 1062 (1970). This familiar reasoning does not give direct guidance on the question of our authority to reject the state court's conclusion as to the invalidity of the second statement, because if we were to do so, we would not be acting to vindicate any right of appellant.

Yet the fundamental purpose of federal habeas corpus is to provide relief only upon proof that "detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *see* 28 U.S.C. § 2254(a). Since in our view the state court's incorrect resolution of the harmless error issue occurred only in conjunction with a prior incorrect holding that constitutional error had taken place, the detention cannot be said to violate any federally protected liberties.[5] We would therefore deem it both anomalous and improper to grant the writ. Nor do we see that any interest of comity would be served thereby.

Indeed, the only possible basis for accepting as final the state court's rejection of the second statement would be a "sporting" theory—that appellant, while having a second chance on points decided against him by the state court, should have the irreversible benefit of points decided in his favor. Had appellant

---

**4.** We note in passing our difficulty with the Appeals Court's rejection of the trial judge's conclusion that Langill also gave complete warnings. It is true that the transcript of the pre-trial hearing omitted any reference to advice that appellant could have counsel appointed if he could not afford an attorney. But the testimony came out on examination by defense counsel, who was making a vigorous and generally effective effort; nothing was made of the omission by way of a request for reiteration or explanation by either the defense or the prosecution; and at trial Langill listed all the required statements, which he said he had made to appellant, with no question being addressed to any prior failure to make one of them. We have, therefore, the instinctive feeling that the trial judge was being accurate in finding that all the warnings were given. But the transcript says otherwise and, because of our views as to the applicability of the Fallon warnings to the second, nearly contemporaneous statement, we have no occasion to take issue with the Appeals Court on the sufficiency of the evidence to support the trial court's conclusions concerning the completeness of Langill's warnings themselves.

**5.** This holding also disposes for the most part of appellant's contention that the third statement (to Whalen) should have been suppressed. Since the preceding statement to Langill was not in our view inadmissible, the later statement was not "poison fruit". We have carefully examined the transcript of the hearing on suppression, and find that there is adequate support for the trial judge's conclusion that appellant knowingly, voluntarily and intelligently waived his right to remain silent after receiving full *Miranda* warnings from Whalen and being informed of the charges against him.

been successful in the state court, either in the initial trial or in his pursuit of post-conviction remedies, the Commonwealth would, of course, have been barred from seeking a redetermination of federal issues in a federal court. But we see no persuasive reason to preclude us from agreeing with the result arrived at by the state court, even though we take a different approach, when federal habeas corpus is sought.

*Affirmed.*