UNITED STATES of America, Plaintiff-Appellee,

v.

Bernard HARRIGAN, Defendant-Appellant.

No. 78–1137.

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1978.

Decided Nov. 14, 1978.

Thomas G. Shapiro, Boston, Mass., by appointment of the court, with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for appellant.

Sara Criscitelli, Atty., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Stephen H. Jigger, Sp. Atty., Boston Strike Force, Boston, Mass., and Robert J. Erickson, Atty., Dept. of Justice, Washington D. C., were on brief, for appellee.

Before KUNZIG, Judge, U. S. Court of Claims,* CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant was convicted after a jury trial of illegal gambling under 18 U.S.C. §§ 2 and 1955. He assigns three errors by the district court as the basis of his appeal:

1. that the district court erroneously instructed the jury on the burden of proof;

2. that the district court erred in its comment on the evidence during the final instructions; and

3. that the district court's failure to suppress evidence of a statement made by appellant at the time of his arrest was error.

I. Instructions on the Burden of Proof

██ The main issue in the case was the identification of appellant as the alleged bookmaker. Exemplars of telephone conversations of persons placing bets with an individual called "Bernie" were introduced in evidence. Defense counsel, Thomas Shapiro, attempted to show that it was probable that the bookmaker was a person by the name of Charles Bernard Gordon. During the prosecutor's summation, the following statements were made in the presence of the jury.

[PROSECUTOR]: So are you convinced Mr. Shapiro has proved to you that Mr. Gordon was the bookmaker in the case?

MR. SHAPIRO: I object to that, your Honor.

THE COURT: The objection is sustained. The jury will disregard the last remark. The only question is whether

* Sitting by designation.

the evidence raises a reasonable doubt, that is, defense evidence. The question with respect to the government's evidence, I'll discuss in a few minutes.

MR. SHAPIRO: I suggest that the defendant has no burden of raising a reasonable doubt.

THE COURT: I say the only question with respect to the defendant's evidence is whether it creates a reasonable doubt and no more. A rather favorable instruction from your point of view; I wouldn't object to it too hard.

The court in charging the jury gave this specific instruction:

You notice that I have not said to try the issue of guilt or innocence. The defendant is not required to establish his innocence. The burden in this trial, as in every criminal trial, is upon the Government to establish the guilt of the defendant by proof beyond a reasonable doubt. That is the reason why I made the comment during the argument that the defendant's evidence has no greater function than simply to raise a reasonable doubt in your minds, if it does. The defendant is not required to go any further.

There is no question that the court's comment during the summation and its instruction was incorrect. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), solidified the constitutional foundation of the reasonable-doubt standard:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

In *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 398, 38 L.Ed.2d 368 (1973), the Court, in holding that an instruction that " 'every witness is presumed to speak the truth' " did not violate due process, explicitly stated: "We imply no retreat from the doctrine of *Winship* when we observe that it was a different case from that before us now."

*Id.* at 148, 94 S.Ct. at 401. The Supreme Court recently emphasized the constitutional importance of the reasonable doubt standard in *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (May 30, 1978).

At least two circuits have held state alibi defenses that put the burden of proof on a defendant to be unconstitutional. *Smith v. Smith,* 454 F.2d 572 (5th Cir. 1972), *Stump v. Bennett,* 398 F.2d 111 (8th Cir. 1968). In *United States v. Flannery,* 451 F.2d 880, 882, 883 (1st Cir. 1971), we signalled our concern that instructions on the burden of proof be correct. In *Wilbur v. Mullaney,* 496 F.2d 1303, 1307 (1st Cir. 1974), we held:

Placing the burden on a defendant to reduce murder to manslaughter may be sound public policy if the state's purpose is to facilitate convictions for murder, but *Winship* teaches that it is constitutionally improper to facilitate convictions at the cost of imposing a burden of proof upon the defendant. *The burden of proof must be on the state throughout; not sometimes on the state, and sometimes on the defendant.* (emphasis ours).

In a habeas corpus case decided this year, we held that incorrect instructions on the burden of proof mandated a new trial. In *Dunn v. Perrin,* 570 F.2d 21, 24 (1978), we stated:

In *United States v. Flannery,* 451 F.2d 880, 833 (1st Cir. 1971), we condemned virtually that exact wording. Although the existence of other reversible error in *Flannery* made it unnecessary for us to resolve the constitutional implications of such a charge, we do so now. That definition of reasonable doubt was the exact inverse of what it should have been. *See United States v. Magnano,* 543 F.2d 431, 436 (2d Cir. 1976); *Bernstein v. United States,* 234 F.2d 475, 486 n. 8 (5th Cir. 1956). *Instead of requiring the government to prove guilt, it called upon petitioners to establish doubt in the jurors' minds.* That is an inescapable violation of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969). (emphasis ours).

The government does not dispute that the court's instructions were erroneous, but asserts that the charge read in its entirety erased the incorrect instructions, or at least reduced them to harmless error proportions. We agree that the instructions must be reviewed in the context of the overall charge. *Cupp v. Naughten, supra,* 414 U.S. at 146–147, 94 S.Ct. 396; *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *Boyd v. United States,* 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857 (1926). It is clear that, aside from the offending paragraph, the charge did state the burden of proof standard correctly. But the instruction that the defendant's evidence "has no greater function than simply to raise a reasonable doubt in your minds, if it does," came at the outset of the charge and formed an integral part of the instructions on the burden of proof. This was not an obvious misstatement or the careless use of words. The district court was convinced at the time of the correctness of its statement. Like the rest of the charge, the offending instruction was given in clear and precise language. There was no reason for an attentive juror, mindful of his duty to take the law from the court, to ignore or disregard this instruction. While the charge did not contain the repeated errors we found fatal in *Dunn v. Perrin, supra,* 570 F.2d at 21, the error was of such a nature that it could not be erased or diminished by the balance of the charge. Moreover, the incorrect instruction in the charge was a repeat of what the jury was told during the prosecutor's summation. And its presumed validity was emphasized to the jury by the judge when, in response to defense counsel's statement that the defendant has no burden of raising a reasonable doubt, he said: "I say the only question with respect to the defendant's evidence is whether it creates a reasonable doubt and no more. A rather favorable instruction from your point of view; I wouldn't object to it too hard." This is clearly not the type of case where the offending instruction is swallowed by an otherwise error free charge and vanishes.

Nor does the harmless error doctrine save the trial. The standard in this circuit for determining harmless error was set forth most recently in *United States v. Christian,* 571 F.2d 64, 69–70 (1st Cir. 1978):

When a trial error infringes on constitutional rights, we must reverse unless we find that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Such doubt can be raised by a "reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Roy v. Hall,* 521 F.2d 120, 123 (1st Cir. 1975).

The government's case rested mainly on intercepted telephone conversations between bettors and a person called "Bernie." The jury heard eighteen recorded telephone conversations to which "Bernie" was a party. A voice exemplar given by appellant to the F.B.I. a week prior to trial was also played to the jury. F.B.I. Agent Lucksted, who had no special expertise or training in voice comparison, testified that it was his opinion that appellant was "Bernie." It was brought out on cross-examination that the agent had never met appellant, except for taking his voice exemplar, and that he knew prior to making the comparison that "Bernie's" voice was believed by the government to be that of appellant. There was evidence by another F.B.I. Agent, Zabowski, from which it might be inferred that Charles Bernard Gordon, the bartender at the Belmont Grill, frequented by appellant, was the one taking bets.

This was far from an open and shut case; the district court at one bench conference told the prosecutor, "You have a lousy case." It was the type of case in which the erroneous instruction might have made the difference between acquittal and conviction. *See United States v. Martin,* 154 U.S. App.D.C. 359, 365, 475 F.2d 943, 949 (1973).

**II. Comments on the Evidence**

■ Appellant's claim that the district court's charge was erroneous because it

summarized the government's evidence without reviewing his evidence at all fails for two reasons. First, appellant is foreclosed from advancing the claim because of his failure to comply with Fed.R.Crim.P. 30.[1] Appellant attempts to avoid the stricture of the Rule on the ground that his objection to the manner in which the court discussed the location of gambling records at the Belmont Grill signalled this broad-based objection. We find that this objection did not and could not reasonably be expected to alert the court to the fact that appellant was also objecting to the court's summary of the evidence. Objection to one part of the court's charge did not meet the requirements of the Rule; it did not state the matter to which appellant objected and the grounds therefor.[2]

■ Secondly, there is no substance to appellant's claim. Because of the nature of the case, there was very little evidence introduced by appellant. Even in his brief, appellant fails to specify the evidence on which he thinks the district court should have commented. The critical issue in the case was identification of appellant as the bookie. Defense counsel's trial strategy was directed to suggesting to the jury that another person who was in a position to take and place bets might be "Bernie," the bookie. The defense was based mainly on adroit cross-examination and the introduction of ambivalent testimony calculated to raise a question of reasonable doubt in the minds of the jury. Any comment on the evidence was circumscribed by the fact that it was only the government that introduced positive evidence.[3] And, of course, a trial judge is necessarily vested with wide discre-

tion as to his charge. *Harris v. United States*, 367 F.2d 633, 636 (1st Cir. 1966). We have examined the charge as a whole and, aside from the error as to the burden of proof, find it evenhanded and fair.[4]

### III. The District Court's Failure to Suppress Evidence

During one of the intercepted telephone calls, a caller said, "Cathy just called," and "Bernie" replied, "I know." F.B.I. Agent Robert Dennis testified, over appellant's objection, that, in response to a direct question, appellant stated that his wife's name was Catherine. In rebuttal argument, the prosecutor adverted to this statement as part of the evidence pointing to the appellant as being "Bernie."

Appellant claims that this statement should have been suppressed under the "Miranda" doctrine or, alternatively, because of the failure to give appellant inventory notice of the wiretap.

■ We first discuss the *Miranda* claim. As we noted most recently in *United States v. Christian, supra*, 571 F.2d at 67–68:

"Merely giving warnings to an accused does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. . . . 'The warnings guarantee that the accused knows what his rights are. But *Miranda* requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them.' "

The initial question here is whether there was a knowing, voluntary and intelligent

---

1. "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

2. We note parenthetically that the well-stated objection to the court's comment on the gambling records was without merit. The court instructed the jury clearly that it was up to them as to what inferences were to be drawn from the location of the record and pointed out carefully that this evidence was corroborative

only. It was not the comments that were prejudicial, but the location of the records.

3. We do not intend to imply any criticism of the way the defense was conducted. Our reading of the record convinces us that defense counsel did a competent job.

4. This charge was far removed from the one given in *United States v. Brandom*, 479 F.2d 830, 832–833 (8th Cir. 1973), cited in appellant's brief, in which the trial judge unequivocally stated that certain contested facts had been proven beyond a reasonable doubt.

waiver as required under *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court ruled that there was a waiver and refused the request of defense counsel for an exploration of the circumstances. Our problem is that the record is extremely sparse as to the circumstances surrounding the waiver. The testimony by Agent Dennis as to the arrest was to the effect that appellant was informed at his house that he was under arrest, advised of his rights orally by reading from the standard F.B.I. form, and then ·provided with a copy of a waiver form while he was being transported to the McCormack Building (for processing), which he signed in the vehicle. On cross-examination, Agent Dennis further testified that, after the oral warnings at his house, appellant stated that he did not wish to make a statement, and, after he signed the waiver form, stated again, in the vehicle, that he did not want to make a statement regarding the charge. Appellant was then asked his address and the name of his wife, both of which questions he answered.

In light of appellant's statements, we think the district court was in error in ruling that there was a waiver without giving defense counsel an opportunity to explore in detail, outside of the presence of the jury, the circumstances surrounding the waiver. Since the case must be retried, we think it advisable for the district court to have a suppression hearing to determine whether, under all of the circumstances, there was a knowing, voluntary and intelligent waiver. If the waiver meets the *Miranda* requirements, there is no fifth amendment problem as to the admissibility of the statement giving the name of appellant's wife. If there were no waiver, then there must be a determination of whether or not the question and answer fall within any exception to the *Miranda* prohibition against custodial interrogation.

■ We turn finally to the question of whether the government's failure to give appellant inventory notice of the wiretap requires suppression of the statement. In our prior case of *United States v. Harrigan*, 557 F.2d 879, 884 (1st Cir. 1977), we held:

Because we believe that injuries which result from a violation of subsection 8(d) should not go unremedied, we join those courts that have accepted the general proposition that suppression is an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured. (citations omitted).

The question, therefore, is whether the failure to serve the inventory notice caused actual prejudice to appellant which cannot otherwise be cured. Appellant argues that, if he had been given inventory notice, he would have known of the telephone number intercepted and the period of the intercept and would, therefore, have realized that some caller had told "Bernie" that Cathy had called and "Bernie" had said, "I know." Thus forewarned, he would then, he contends, have been aware of the incriminating potential in his wife's name and would have refused to answer what appeared to be a routine question. This, we think, is reasoning strained to the breaking point. Leaving aside the very real question as to whether the inventory notice would, in fact, have alerted him to the inculpatory nature of his wife's name,[5] the appellant learned at the grand jury session two weeks prior to his arrest that his wife's voice played a role in the proceedings because the prosecutor played several of the taped conversations and appellant was specifically asked whether he could identify his or his wife's voice. It would not take a quantum jump to deduce that his wife's name might have some inculpatory potential. Any prejudice by the failure to give inventory notice was, in fact, cured by the tapes played and the questions asked of appellant at the grand jury session. This is not the situation where the government sits back with an undisclosed intercept so as to contradict a defendant's

---

5. An inventory notice would disclose "[(1) the fact of the entry of the order, (2) the date of the entry and the period of authorized interception, and (3) the fact that during the period wire or oral communications were intercepted.]" 18 U.S.C. § 2518(8)(d).

testimony or misleads a defendant into believing that there are no tapes of implicating telephone conversations. In *United States v. Harrigan, supra*, 557 F.2d at 884, we expressed doubts "that many defendants will be able to make a showing of actual prejudice." The claim of prejudice here is too attenuated to require suppression of the statement because of the failure to give appellant inventory notice of the wiretap.

*Reversed and remanded for further proceedings consistent herewith.*