Thomas A. TSOUMAS and David S. Sands

v.

The STATE OF NEW HAMPSHIRE and the Attorney General of the State of New Hampshire.

Mark C. WENTWORTH

v.

Unwar J. SAMAHA, in his capacity as Clerk of the Rockingham County Superior Court and Thomas Rath, in his capacity as Attorney General for the State of New Hampshire.

Civ. Nos. 78–447–D, 79–5–D.

United States District Court, D. New Hampshire.

June 26, 1979.

Stanley M. Brown, Manchester, N. H., David J. KillKelley, Laconia, N. H., Thomas R. Watson, Portsmouth, N. H., for Tsoumas and Sands.

Robert Upton, II, Jon Meyer, N. H. Civil Liberties Union, Concord, N. H., for Wentworth.

John C. Boeckeler, Asst. Atty. Gen., Concord, N. H., for respondents.

## ORDER AND OPINION

DEVINE, Chief Judge.

These are consolidated habeas corpus petitions (28 U.S.C. § 2254) in each of which the primary issue presented is the correctness of the state trial court's jury instructions on "reasonable doubt".[1] The Court has had the opportunity to hear oral argument and review the briefs of counsel together with the trial transcripts.[2]

Petitioner Wentworth was one of approximately 1400 anti-nuclear demonstrators arrested on May 1, 1977, at the site of the ongoing construction of the Seabrook Nu-

---

1. Petitioner Wentworth also challenges the sentence imposed upon him in Rockingham County Superior Court. For reasons hereinafter outlined, we do not find it necessary to decide this issue.

2. In Wentworth's case, the transcript of trial is complete. In the cases of the other petitioners, the trial record was not available, but the Court was furnished with a transcript of the complete charge to the jury.

clear Power Plant. He was subsequently charged with and convicted of criminal trespass (RSA 635:2 [3]) in the Hampton District Court. Sentenced to fifteen days in jail and a fine of one hundred dollars, he appealed to Rockingham County Superior Court.[4] Jury trial therein resulted in a verdict of guilty, and Wentworth was then sentenced to a jail term of six months, two months of which were suspended. On appeal the Supreme Court of New Hampshire overruled his exceptions on December 6, 1978. *State v. Wentworth*, 118 N.H. ——, 395 A.2d 858 (1978).[5]

Wentworth relied in the Supreme Court of New Hampshire on the decision (decided after his conviction) of the First Circuit in *Dunn v. Perrin*, 570 F.2d 21 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978). The Court found the jury instruction distinguishable from that held invalid in *Dunn*, and further held that *Dunn* was erroneously decided, at least in part (395 A.2d at 860, 861, 862). However, the Court then went on to exercise its supervisory jurisdiction and to set forth a "Model Charge" on reasonable doubt for future use by the superior courts (395 A.2d 862, 863).

Petitioners Sands and Tsoumas were indicted by a Carroll County grand jury for the crime of perjury (RSA 641:1 [6]) in connection with statements made by them under oath concerning the "Forest Preservation Trust" and the identity of its trustee, "William Smith". Their trial concluded on December 13, 1978, and resulted in conviction. Inasmuch as *Wentworth, supra,* had been decided prior to the conclusion of their trial, the trial court largely adopted the "Model Charge" therein set forth.

Because the only issue raised by Sands and Tsoumas concerns the trial court's instructions to the jury on reasonable doubt, we permitted them to proceed directly in this court without requiring exhaustion of state avenues of appeal. *See: Sarzen v. Gaughan,* 489 F.2d 1076, 1082 (1st Cir. 1973).

## I. C. 79–5, Wentworth

The charge on the reasonable doubt standard, to which Wentworth objects, is as follows:

> Under our system of justice, which has been time-tested, not only in this nation but in England where we inherited our judicial system, every person accused of crime who walks into a courtroom is presumed to be innocent. The defendant in a criminal case has no burden of proving anything.
>
> What is this presumption of innocence? Until such time as the State proves beyond a reasonable doubt all of the essential allegations contained in the complaint, the defendant is presumed to be innocent.
>
> I just used the phrase 'reasonable doubt'. Under our system of justice, we

---

**3.** Insofar as here pertinent, RSA 635:2 provides:

    I. A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place.

    II. Criminal trespass is a misdemeanor if

    .   .   .   .   .

    (b) the person knowingly enters or remains

    .   .   .   .   .

    (2) in any place in defiance of an order to leave or not to enter which was personally communicated to him by the owner or other authorized person.

**4.** As regards misdemeanors, New Hampshire has a two-tier system wherein defendants are tried in a district or municipal court without jury subject to appeal with a right to trial *de*

novo by jury in the superior court. *State v. Dickson,* 116 N.H. 175, 355 A.2d 822 (1976).

**5.** Wentworth's defense of competing harms, not here presented, was disposed of by the New Hampshire Supreme Court in the companion case of *State v. Dorsey,* 118 N.H. ——, 395 A.2d 855 (1978).

**6.** Insofar as here pertinent, RSA 641:1 provides:

    I. A person is guilty of a class B felony if in any official proceeding

    (a) he makes a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true .   .   ..

do not require that the State prove their case to a mathematical certainty, nor do we require that the State remove all slight or frivolous doubt from your minds, but before a verdict of guilty can be returned in any case by a jury, all reasonable doubt must be removed by the evidence which you have heard presented by the State. And once again, upon any issue which you have to determine in this case, you can consider the evidence as you heard it from any witness, no matter who produced it.

In December of last year, the State of New Hampshire Supreme Court decided a case called *State v. Black,* and that case probably has as good a definition of what reasonable doubt is as any I've seen. In that case, our Supreme Court defined a reasonable doubt as follows:

'*A reasonable doubt can be defined as a strong and abiding conviction that still remains after a careful consideration of all of the evidence*'—*a strong and abiding conviction*—'but where our belief in a fact is so uncertain that we would hesitate to act upon the strength of it to undertake something of importance and seriousness equal to this case, then there is reasonable doubt.'

Vol. II, Tr. pp. 101, 102. (Emphasis supplied.)

Petitioner herein argues that the language above emphasized worked an impermissible shift of the state's burden to prove him guilty of the offense charged beyond a reasonable doubt. Analysis of this contention in the context of a habeas petition requires resolution of two issues. First, did the inclusion in the jury charge of the "strong and abiding conviction" language constitute an error of constitutional magnitude? 28 U.S.C. § 2254(a); *Grieco v. Meac-*

*hum,* 533 F.2d 713, 716 (1st Cir.), *cert. denied sub nom. Cassesso v. Meachum,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976). If we find such error to exist, we must then go on to consider whether it was "harmless" in light of the jury charge taken as a whole or in the face of the evidence of the petitioner's guilt. *See generally: Vitello v. Gaughan,* 544 F.2d 17, 18 (1st Cir. 1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

At the outset, we reject the suggestion of respondents that since *Dunn v. Perrin, supra,* was decided after Wentworth's conviction, the logic of that opinion is not here applicable. The concern of New Hampshire with regard to past reliance on ancient jury instructions, and its fears about the potentially adverse impact upon the administration of justice, are not here significantly implicated. *See: Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). Our determination that *Dunn* applies to the case at bar does not reach the question of whether its holdings bear upon cases, unlike the instant case, for which ordinary avenues of appeal have been exhausted. *Cf., Hancock v. White,* 378 F.2d 479 (1st Cir. 1967). Moreover, the New Hampshire Court itself chose to deal with *Dunn's* implications for this case without comment upon its retroactive application, which was also briefed before it.[7]

In rejecting the application of *Dunn* to the instant case, the New Hampshire Court stressed the fact that the Circuit had found three errors in the definition of reasonable doubt, but then went on to disagree with its conclusion that one of those errors which dealt with the "strong and abiding conviction" language was properly so classified.

---

**7.** Although *Dunn* resolved for the first time in this Circuit the constitutional implications of including the "strong and abiding conviction" language in a jury instruction on reasonable doubt, such holding, rather than marking a clean break with the past, constitutes merely a direct application of the principles enunciated in *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See: Jackson v. Justices of the Superior Courts of Massachusetts,*

549 F.2d 215, 218 (1st Cir.), *cert. denied,* 430 U.S. 975 97 S.Ct. 1666, 52 L.Ed.2d 370 (1977). In addition, a fair reading of *Dunn* demonstrates that it did not lay the groundwork for overturning guilty verdicts in all past trials wherein the charge here in question was given. Convictions challenged via habeas on the basis of *Dunn* will thus continue to rise or fall on their own individual merits.

(395 A.2d at 861, 862.) With all due respect, we find this conclusion to be constitutionally impermissible.

In *Dunn,* the Court analyzed an instruction which stated:

It [reasonable doubt] does not mean a trivial or a frivolous or a fanciful doubt nor one which can be readily or easily explained away, but rather such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments  .  .  ..

Immediately after quoting the above language of the trial court, 570 F.2d at 23, 24, the *Dunn* court went on to state:

In *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir. 1971), we condemned virtually that exact wording. Although the existence of other reversible error in *Flannery* made it unnecessary for us to resolve the constitutional implications of such a charge, we do so now. That definition of reasonable doubt was the exact inverse of what it should have been. *See United States v. Magnano,* 543 F.2d 431, 436 (2d Cir. 1976); *Bernstein v. United States,* 234 F.2d 475, 486 n. 8 (5th Cir. 1956). Instead of requiring the government to prove guilt, it called upon petitioners to establish doubt in the jurors' minds. That is an inescapable violation of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969).

570 F.2d at 24.

*United States v. Flannery,* 451 F.2d 880, was decided on November 12, 1971. Therein, Chief Judge Aldrich, speaking for a unanimous court, stated as follows:

We believe that in charging the jury, with respect to reasonable doubt, that 'a reasonable doubt can be defined as a strong and abiding conviction that still remains after careful consideration of all the evidence,' the court must have misspoken itself. A reasonable doubt by definition means a doubt founded upon reason and not speculation, but it certainly does not require, as charged by the court, a 'strong and abiding conviction.' This is the burden that is on the government. *See United States v. Byrd,* 2 Cir., 1965,

352 F.2d 570, 575; *Commonwealth v. Webster,* 1850, 5 Cush. (59 Mass.) 295, 320.

451 F.2d at 882–883.

In addition, on November 14, 1978, prior to the state court decision in the instant case, the First Circuit (Bownes, J., speaking for a unanimous court) again addressed the issue of burden of proof as to reasonable doubt and quoted with approval the language we have hereinabove set forth from *Dunn.* *United States v. Harrigan,* 586 F.2d 860, at 862 (1st Cir. 1978). We, therefore, find and rule that the instruction here challenged is virtually indistinguishable from, and therefore no less "clearly wrong" constitutionally than, the language considered in *Dunn* and *Flannery.* The respondents argue, however, that if such error exists, it either vanishes in the context of the jury charge as a whole (*Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 [1974]), or was harmless in the face of the evidence of guilt adduced at the petitioner's trial. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1968).

We agree that the instruction must be reviewed in the context of the overall charge (*Cupp v. Naughten, supra* ; *United States v. Harrigan, supra* ), but upon close analysis of the charge as a whole, we do not feel that the offending instruction was effectively "swallowed" by error-free portions of the charge. *United States v. Harrigan,* supra.

Unlike the charge in *Dunn,* which included a variety of formulations on reasonable doubt, the instructions here consisted of at most four definitions:

Under our system of justice, we do not require that the State prove their case to a mathematical certainty  .  .  .

nor do we require that the State remove all slight or frivolous doubt from your minds.

"A reasonable doubt can be defined as a strong and abiding conviction that still remains after a careful consideration of all of the evidence"—a strong and abiding conviction  .  .  .

"but where our belief in a fact is so uncertain that we would hesitate to act upon the strength of it to undertake something of importance and seriousness equal to this case, then there is reasonable doubt."

Vol. II, Tr. pp. 101, 102.

In the respondents' view of these formulations in the context of the entire charge the impact upon the jury of the erroneous "strong and abiding" language should be considered minimal. First, quoting from the state court's opinion (395 A.2d at 861) the respondents suggest that the challenged phrase "simply contrasts a reasonable doubt with one that is slight or frivolous." Second, the respondents argue that the "hesitate to act" instruction that immediately follows the "strong and abiding conviction" phrase served to correct any erroneous impression of reasonable doubt. We disagree. It is clear from the trial judge's placement of and emphasis upon the "strong and abiding conviction that still remains" language that this particular definition was to be uppermost in the minds of the jury: The erroneous phrase appeared first in the judge's quote from "as good a definition of what reasonable doubt is as any I've seen," and the judge repeated the words "strong and abiding conviction" before proceeding further. In light of the treatment accorded the "slight or frivolous doubt" and "hesitate to act" expressions in *Dunn*, we do not feel that this prominence was sufficiently diminished in the minds of the jury. In *Dunn*, language substantially similar to the "slight or frivolous" formulation was placed, unlike in the charge here considered, in immediate juxtaposition with the "strong and abiding conviction" definition; yet, the *Dunn* court was no less critical of that charge than it had been in *Flannery, supra*, where the latter phrase had appeared by itself. Nor can the "hesitate to act" definition which immediately followed the erroneous instruction both here and in *Dunn* be said to have strong "curative" properties: That definition itself

was held to lack constitutional infirmity only because of the combined effect of its two components, one of which has been criticized for its "tendency to trivialize the constitutionally required burden of proof." *Dunn, supra*, at 24–25.[8]

We are fully aware that the trial judge here, as in *Dunn*, reminded the jury on several occasions, apart from the definition of reasonable doubt, that the State was obliged to prove beyond a reasonable doubt all of the essential elements of the offense charged. However, in light of the emphasis placed upon the constitutionally erroneous language in that portion of the charge which defined the critical concept of reasonable doubt, we cannot find that the charge in its entirety reduced the impact of the "strong and abiding conviction" language to harmless error proportions. As in *Harrigan, supra* :

> [t]his was not an obvious misstatement or the careless use of words. The . . . court was convinced at the time of the correctness of its statement. Like the rest of the charge, the offending instruction was given in clear and precise language. There was no reason for an attentive juror, mindful of his duty to take the law from the court, to ignore or disregard this instruction."

586 F.2d at 863.

Turning next to the respondents' suggestion that the evidence was so overwhelming that the allegedly erroneous instruction constituted harmless error (*Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 [1968]), we must consider the applicable standard in this Circuit which requires that we find such error to be harmless beyond a reasonable doubt. *United States v. Christian*, 571 F.2d 64, 69–70 (1st Cir. 1978).

Under the applicable statute (RSA 635:2), the prosecution herein is required to prove beyond a reasonable doubt that petitioner, in defiance of an order to leave that was

**8.** As noted in *Dunn, supra*, at 25, n. 26, the phrases "hesitate to act", as used in the charge at petitioner's trial, and "refrain from acting", as employed in *Dunn,* are used interchangeably in the case law.

personally communicated to him by the owner or other authorized person, knowingly remained in a place where he knew he was not licensed or privileged to so remain. Testimony of William A. Adams, Jr., Executive Vice President of Public Service Company of New Hampshire, and Vice President of Properties, Inc., was sufficient to demonstrate that Colonel Doyon of the New Hampshire State Police had been granted proper authorization to order the demonstrators to leave the property owned by Properties, Inc. (Tr. I, at 36). As to the other elements of the offense charged, however, the State's strongest evidence was introduced during the course of the petitioner's own testimony.

On direct examination, petitioner stated that he was on the site of the nuclear power plant on May 1, 1977, and was aware that he would perhaps be trespassing by being there (Tr. II at 12). During cross examination, petitioner further admitted that he was on the parking lot area (which had earlier been shown to be the property of Properties, Inc.) when Colonel Doyon announced over speakers in State Police cruisers that the demonstrators would have to leave or face arrest for criminal trespass (Tr. II at 58); that he was able to hear the announcement and understand its importance (Tr. II at 58); and that he decided to stay despite the announcement (Tr. II at 61). While this and other circumstantial evidence of petitioner's guilt may most certainly be said to be substantial, it cannot be said to be overwhelming. The issue of where petitioner was actually located at the time of his arrest was never directly established by the evidence adduced at trial. Moreover, the testimony of Pierre Caron, corporate counsel for Public Service Company, and Properties, Inc., and of Vice President Adams of Properties, Inc., left open the possibility that petitioner might well have been on the property of the B & M Railroad, which adjoined the parking lot owned by Properties, Inc., at the time of his arrest (Tr. I at 19, 44).[9] In sum, even in light of the evidence adduced at trial, we cannot say that the trial judge's erroneous "strong and abiding conviction" instruction was harmless beyond a reasonable doubt.[10]

Since we have determined that the petitioner's challenge to his jury instructions is to be sustained, we do not here reach (n. 1, *supra*) the issue of his sentencing. It is not at all apparent that upon retrial, if any, petitioner will again face the sentence of which he here complains. Therefore, our consideration of his claim under the Eighth Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment is best left to another day.

■ Parenthetically, however, we wish to note our concern regarding petitioner's allegation that the rights of Seabrook defendants under N.H. RSA 502–A:12 to appeal their District Court conviction for a trial *de novo* in the Superior Court are being unconstitutionally deterred by the stance of the prosecution in such cases. *See: Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). Although it has never been held that a state must, as New Hampshire has done here, create a two-tiered system of criminal adjudication, "it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), quoting from *Rinaldi v. Yeager,* 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966). Under such a system, "[a] person convicted of an offense is entitled to pursue his statuto-

---

**9.** Through witnesses Caron and Adams, the State introduced evidence to the effect that if petitioner had been on B & M property, Public Service Company apparently had the authority from an agreement with B & M to remove him (Tr. I at 15, 20, 44). Note, however, that the original complaint against petitioner Wentworth charged him with remaining on a certain tract of land owned by Properties, Inc.

**10.** Because we have found that the trial judge's error in petitioner Wentworth's case was not harmless in fact, we need not, and do not, resolve the question left open in *Dunn, supra,* at 25, whether or not such an error can never be considered harmless as a matter of law.

ry right to a trial *de novo,* without apprehension that the State will retaliate by . . subjecting him to a significantly increased potential period of incarceration." *Blackledge, supra,* 417 U.S. at 28, 94 S.Ct. at 2102. However, for the reasons stated above, and because it is unclear on the record whether this particular argument has been fully considered by the Supreme Court of New Hampshire, we do not reach the merits of this aspect of petitioner Wentworth's sentencing claims.

## II. 78–447, Tsoumas and Sands

■ As we have previously indicated, the trial court in the charge in this action substantially adopted the "Model Charge" suggested by the state court in *Wentworth, supra* (395 A.2d at 862, 863). He stated:

As stated, and you are so instructed, again, the State has the burden of establishing, and thus proving, the guilt of the defendants based on all of the courtroom evidence, and that, alone, to your satisfaction beyond a reasonable doubt, in order for you to return verdicts of guilty. If you were to find, from all the evidence and the applicable law, that is the law applicable to these cases which I'm about to furnish you with, that the State had failed to meet that burden, then, and if that were your finding, you would be duty bound, under your respective oaths, to return verdicts of not guilty in connection with any indictment concerning which you find the State had failed to do so.

As for the legal meaning and importance to be attached to the presumption of innocence of the defendants, as well as the legal burden of proof, the State has to prove his guilt beyond a reasonable doubt. I'll now instruct you regarding that meaning, specifically, in the eyes of the law, the meaning of the term reasonable doubt.

Obviously, there are some things those terms mean, or that doctrine is such, and other things that it doesn't mean. Members of the Jury, under our Constitution, all defendants in criminal cases are presumed, as I mentioned, to be innocent until proven guilty beyond a reasonable doubt. The burden of proof is entirely on the State. The defendant does not have to prove, neither defendant in this case, his innocence. The defendants entered this courtroom as innocent persons, and you must consider them to be innocent persons, and you must consider them to be innocent until, as I have mentioned, the State convinces you, based on all of the evidence, beyond a reasonable doubt, that they are guilty of every element of the alleged offenses. If, after all the evidence and argument, you have a reasonable doubt, and you will shortly know what that term means, as to the defendants having committed any one or more of the elements of those offenses, which I'll cover with you, then you must find them not guilty, if that were your finding.

A reasonable doubt, members of the Jury, is just what the words would ordinarily imply. The use of the word reasonable means simply that the doubt must be reasonable, rather than unreasonable; it must be a doubt based on reason. It is not a frivolous or fanciful doubt, nor is it one that can easily be explained away. Rather, members of the Jury, it is such a doubt, that is reasonable doubt, based upon reason as remains after consideration of all the evidence that the State has offered against it.

The test you must use, in all of these cases, is this: if you have a reasonable doubt as to whether the State has proved any one or more of the elements of the crimes charged, you must find the defendants not guilty. However, if you find that the State has proved all of the elements of the offenses charged beyond a reasonable doubt, then you'd be duty bound to find the defendants guilty. (Tr. at 7–9.)

The language of this charge omits the "good and sufficient reason" and "strong and abiding conviction" language found objectionable in *Dunn v. Perrin, supra.*

Petitioners Tsoumas and Sands argue that even with these erroneous expressions so excised, the model charge is still constitutionally suspect. In particular, they suggest that defining reasonable doubt as one that is "not a frivolous or fanciful doubt, nor is it one that can easily be explained away" is analogous to instructing, as has been held objectionable in other contexts, that this doubt must be "good and sufficient" or "substantial" in addition to being based on reason. *See, e. g., Taylor v. Kentucky,* 436 U.S. 478, 488, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978); *Dunn, supra,* at 23, and *United States v. Alvero,* 470 F.2d 981, 982–983 (5th Cir. 1972). Moreover, they argue that the deletion of the words "strong and abiding conviction" failed to eliminate what they believe to have been the focus of the *Dunn* court's objection: the impact of the word "remains." Finally, petitioners maintain that substitution in the model charge of the words "after consideration of all the evidence that the State has offered against it" for the words in *Dunn* —"after careful consideration of all the facts and arguments [against it]"—impermissibly suggests that reasonable doubt may not be raised by the evidence as a whole, and even implies that the State's case itself cannot create a reasonable doubt. While we may agree with petitioners that the above language might be better left out or reworded, we do not feel that the trial judge's charge, when viewed in its entirety, conveyed to the jury an incorrect conception of the State's exclusive burden in this case. *Cupp v. Naughten, supra; see also United States v. Muckenstrum,* 515 F.2d 568, 571 (5th Cir.), *cert. denied,* 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975).

In the first place, the model charge on "reasonable doubt" employed in this case focuses not on such extraneous words as "strong and abiding conviction" but upon "just what the words would ordinarily imply": "the doubt must be reasonable, rather than unreasonable, it must be a doubt based upon reason." In this regard, the complained-of language that appears in the next sentence—"It is not a frivolous or a fanciful doubt, nor is it one that can easily be explained away"—serves only an auxiliary, contrasting role.[11] Indeed, the reappearance of the "based upon reason" language in the final sentence of the definitional paragraph reinforces the earlier formulation. Secondly, the trial judge repeatedly admonished the jury that they were to base their decision on whether the State had proved its case beyond a reasonable doubt on "all the evidence" (Tr. at 8, 11, 21, and 35). An instruction to that effect was even added to the model charge:

> The defendants entered this courtroom as innocent persons, and you must consider them to be innocent until, <u>as I have mentioned</u>, the State convinces you, <u>based on all the evidence</u>, beyond a reasonable doubt, that they are guilty of every element of the alleged offenses.

Tr. at 8. (Underlined portions represent words added by the trial judge to the model charge.) Finally, the transcript of the charge reveals that at several junctures and through a variety of formulations, the trial judge impressed upon the jury that petitioners had neither the burden of proving nor of disproving anything, the burden resting solely upon the State (Tr. at 5, 6, 7, and 35.)[12]

In sum, even though the jury charge in the case of petitioners Tsoumas and Sands contains arguably less than ideally worded phrases from the model charge set forth in *Wentworth, supra,* 395 A.2d at 862–863, we find that the instructions, viewed in their entirety, conveyed to the jury the correct standard on reasonable doubt. Thus, we need not, and do not decide whether the phrases challenged by petitioners amount to constitutional error, since they were effec-

---

11. Compare in petitioner Wentworth's case the State's argument that the "strong and abiding conviction" language served only to contrast the earlier appearing "slight or frivolous doubt" phrase in that charge.

12. By contrast, note that only once in the trial judge's charge in petitioner Wentworth's case was it stated that the defendant had no burden of proving anything. (See Wentworth Tr. II at 101.)

tively "swallowed" and "erased" by the balance of the charge. *Cf., United States v. Harrigan*, 586 F.2d 860, 863 (1st Cir. 1978).[13]

## CONCLUSION

For the reasons hereinabove set forth, it is hereby Ordered that in Civil Action No. 79–5, *Wentworth*, respondents shall make arrangements to retry petitioner within sixty days of the date of this Order; otherwise, the writ shall issue.

In Civil Action No. 78–447, *Tsoumas and Sands*, the petitions for habeas corpus are denied.

SO ORDERED.

---

13. We recognize too that it is not our function to pass upon the desirability of a particular wording utilized by the New Hampshire Supreme Court in its model charge: " 'review . . . of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction.' " *Cupp v. Naughten*, 414 U.S. at 149, 94 S.Ct. at 401, *quoting from McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). The model charge represents an admirable effort to articulate the inter-relationship between two equally fundamental principles (*see Taylor v. Kentucky, supra*, 436 U.S. at 483, 98 S.Ct. at 1934), one which we suspect will undergo further modification when considered in future cases.