Breest v. Brodeur                    CV-95-100-SD  08/04/97

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Robert Breest,
        Petitioner

        v.                                        Civil No. 95-100-SD

Paul Brodeur,
        Respondent


                            O R D E R

Robert Breest, who stands convicted of brutally murdering a Manchester woman named Susan Randall in 1971, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In it, he raises two claims for relief.  The first has already been considered and rejected as procedurally defaulted by the First Circuit; the second is a variation of an argument also previously considered and rejected.  Petitioner contends that an intervening 1993 Supreme Court decision renders his first claim non-successive, see 28 U.S.C. § 2244(b) (1966) (permitting merits-based consideration of a previously-asserted claim if the claim is anchored upon new grounds)[1] and that newly-discovered evidence makes the second claim non-abusive, see Schlup v. Delo, 513 U.S. 298, 318 n.34 (1995) (noting that abusive claims include

_____

        [1]In accordance with Lindh v. Murphy, 117 S. Ct. 2059 (1997), the court does not retroactively apply the 1996 amendments to § 2244 to this 1995 petition.

                              1

those that were available but not asserted in a prior petition).

Presently before the court are a number of motions, including respondent's motion to dismiss.  Finding that the new grounds advanced in support of petitioner's first claim do not call into question the First Circuit's determination that the claim is procedurally defaulted, that petitioner's second claim is abusive, that the cause-and-prejudice exception to the general rule against abusive petitions does not apply, see id. at 318-19, and that denial of the writ would work no fundamental miscarriage of justice, see generally id. at 319-23, the court grants respondent's motion.

Petitioner's previous applications for collateral relief are addressed in a number of published opinions.  See Breest v. Perrin, 479 F. Supp. 495 (D.N.H. 1979), aff'd, 624 F.2d 1112 (1st Cir.), cert. denied, 449 U.S. 1020 (1980); Breest v. Perrin, 495 F. Supp. 287 (D.N.H. 1980), aff'd, 655 F.2d 1 (1st Cir.), cert. denied, 454 U.S. 1059 (1981); Breest v. Helgemoe, 579 F.2d 95 (1st Cir.), cert. denied, 439 U.S. 933 (1978); Breest v. Cunningham, 752 F.2d 8 (1st Cir. 1985); Breest v. Cunningham, 784 F.2d 435 (1st Cir.), cert. denied, 479 U.S. 842 (1986). Several of these opinions recite in considerable detail the salient facts of the murder and petitioner's trial.  The court therefore proceeds directly to the merits of petitioner's claims.

2

As noted, the two events of which petitioner complains --
(1) the trial judge's flawed description of reasonable doubt and
concomitant understatement of the State's burden of proof when
instructing petitioner's jury; and (2) the State's failure to
advise petitioner that an important State witness, a person now
known to have been named David Chapman at the time of trial,
would be testifying under a former, and therefore false, identity
(David Carita) -- are not new to the federal courts.  In fact,
and importantly, the First Circuit has already held that neither
event is sufficient to warrant a new trial.

With respect to petitioner's first claim, it did so
explicitly when it ruled that petitioner had not demonstrated
either cause for or actual prejudice arising out of his failure
to object and take an exception to the challenged instruction at
his trial.  See Breest v. Cunningham, 784 F.2d at 436-38
(concluding that the narrow exception to the procedural default
rule set forth in Wainwright v. Sykes, 433 U.S. 72 (1977), did
not apply).[2]  And with respect to petitioner's second claim, it
did so implicitly when it concluded that there was no reasonable
likelihood that the State's non-disclosure of a bargain it made
with Carita/Chapman (a bargain that included a promise of a name

_____

[2]The New Hampshire Supreme Court had previously found this
claim to have been procedurally defaulted.  See Martineau v.
Perrin, 119 N.H. 529, 531-33 (1979).

3

change in exchange for testimony against petitioner) could have affected the jury's judgment.  See Breest v. Perrin, 624 F.2d at 1115-17.

Petitioner does not dispute this.  Instead, he contends that recent events have effectively invalidated these First Circuit decisions.  Subsumed within this general assertion are two arguments.  First, petitioner necessarily (though not explicitly) takes the position that the Supreme Court's 1993 holding that a defective reasonable doubt instruction which effectively understates the prosecution's burden of proof is a never-harmless structural error, see Sullivan v. Louisiana, 508 U.S. 275, 278-82 (1993), and the First Circuit's subsequent case-specific determination that a defective reasonable doubt instruction given in a federal criminal trial was plainly erroneous under Fed. R. Crim. P. 52(b), see United States v. Colon-Pagan, 1 F.3d 80, 81-82 (1st Cir. 1993)[3], combine to undermine the Circuit's prior cause-and-prejudice determinations with respect to the reasonable doubt instruction in his case.[4]  Second, petitioner argues that

_____

[3]Of course, Rule 52(b)'s plain-error inquiry does not apply here.  The Supreme Court has rejected the suggestion that plain-error review supplant the cause-and-prejudice standard which governs procedurally-defaulted claims asserted under § 2254.  See Engle v. Isaac, 456 U.S. 107, 134-35 (1982).

[4]Alternatively, petitioner may be arguing that Sullivan and Colon-Pagan combine to permit him to characterize his conviction as a fundamental miscarriage of justice.  See Schlup, 513 U.S. at

4

his recent receipt of Massachusetts Probate Court records confirming that, in 1971, David Carita officially changed his name to Joseph Chapman now permits him to assert that he was denied his Sixth Amendment right to confront and impeach Carita/Chapman at trial. Neither argument is persuasive.

The court assumes arguendo that the holding of Sullivan is to be retroactively applied on collateral review. See Adams v. Aiken, 41 F.3d 175, 178-79 (4th Cir. 1994) (a deficient reasonable doubt instruction qualifies for retroactive application under Teague v. Lane, 489 U.S. 288 (1989), because a finding of guilt beyond reasonable doubt is "implicit in the concept of ordered liberty"), cert. denied, 515 U.S. 1124 (1995); Nutter v. White, 39 F.3d 1154, 1157-58 (11th Cir. 1994) (same). As a result, petitioner may well be correct when he says that Sullivan undermines the Circuit's prior prejudice determination. See Breest v. Cunningham, 784 F.2d at 437-38 (finding no

---

319-21 (explaining the miscarriage-of-justice exception to the general bar against successive or abusive claims). To the extent that this is so, the argument fails. The miscarriage-of-justice exception applies only to supported claims of actual innocence. See id. at 321. Here, petitioner has adduced no new evidence which can be thought to call into question the Circuit's prior determination that, even without the Carita/Chapman testimony (which the court discounts in recognition of the second argument petitioner advances), "the net effect of the evidence . . . would . . . point strongly toward guilt, though not compellingly." Breest v. Perrin, 624 F.2d at 1116. There is, therefore, no viable miscarriage-of-justice argument available to petitioner in this case.

5

prejudice because of a now-prohibited inquiry into the existence _vel_ _non_ of record evidence of guilt); _cf._ _also_ _Scarpa_ v. _Dubois_, 38 F.3d 1, 14 (1st Cir. 1994) (implying that a deficient reasonable doubt instruction is prejudicial within the meaning of _Strickland_ v. _Washington_, 466 U.S. 668 (1984)), _cert._ _denied_, 513 U.S. 1129 (1995).  He has not, however, explained how _Sullivan_ can be taken to call into question the Circuit's conclusion that "Breest has failed to meet the 'cause' requirement of _Wainwright_ v. _Sykes_."  _Id._ at 437.  The court is thus left to infer that petitioner's position on this point is as follows:  no cause for a procedural default need be shown when the defaulted claim involves structural error.  The caselaw does not support this position.

The Supreme Court has made it clear that the seriousness of a constitutional error does not relieve a petitioner of demonstrating _both_ cause for _and_ actual prejudice arising out of a procedural default:

> While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing . . . .  [A]ny prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.

_Engle_, 456 U.S. at 129; _cf._ _also_ _Hankerson_ v. _North Carolina_, 432 U.S. 233, 244 n.8 (1977) (indicating that state convictions

6

obtained in the face of unobjected-to jury instructions unconstitutionally shifting the burden of proof to defendants should not be upset on collateral review).  Thus, petitioner "cannot excuse his procedural mistakes simply because his substantive claims turn on structural -- rather than trial -- errors."  United States v. Anderson, ___ F. Supp. ___, 1997 WL 370254 at *6 (N.D. Ill. June 30, 1997) (federal habeas case) (collecting cases).

Although petitioner does not explicitly so contend, his general argument might be taken to encompass an assertion that petitioner's trial counsel's failure to object and take an exception constituted constitutionally ineffective assistance of counsel sufficient to establish cause under Wainwright.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  To prevail on this argument, petitioner must, of course, establish that counsel's failure was objectively unreasonable.  See Strickland, 466 U.S. at 688.  Such a showing requires considerably more than that which already has been established:  a lack of cause for counsel's failure to object.  See Engle, 456 U.S. at 133-34 (making clear that a lack of cause for failure to object is not tantamount to constitutionally ineffective assistance of counsel).  It instead necessitates a demonstration that the failure to object and take an exception fell outside "the wide

7

range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In previously arguing that there was legal cause for his failure to object and take an exception, petitioner pointed to the fact that the reasonable doubt instruction given at his trial had been used for decades in New Hampshire. See Breest v. Cunningham, 784 F.2d at 437. He also observed that, in the years following his conviction, New Hampshire courts upheld the constitutionality of substantially similar instructions. See id. Although the First Circuit did not regard these facts as sufficient to establish cause, see id. at 436 (noting that, two years prior to petitioner's trial, the Circuit had, in dictum, condemned an instruction containing "virtually identical" wording to that challenged here) (citation omitted), it in no way took issue with their accuracy. Thus, notwithstanding the Circuit's prior cause determination, petitioner has not established that his trial counsel's failure to object to a then-run of the mill instruction was outside the bounds of professional competence. Unfair as it may seem to petitioner, there is a considerable expanse between cause for failing to object on account of the state of the law at the time of trial and constitutional ineffectiveness in failing to object. See Engle, 456 U.S. at 133-34. This case is within that expanse. Petitioner's first

8

claim therefore continues to be procedurally defaulted for plaintiff's failure to demonstrate cause for his failure to object and take an exception to the challenged instruction. <u>See</u> <u>Breest</u> v. <u>Cunningham</u>, 784 F.2d at 436-37.

Petitioner's second claim fails for an even more fundamental reason: petitioner has, at least since 1979, had reason to know that David Carita had been given a different identity prior to his trial. <u>See</u> December 18, 1979 Affidavit of William G. Bergin at 1, 2; <u>see</u> <u>also</u> January 17, 1980 Affidavit of W. Michael Dunn at 1-2; February 15, 1980 Affidavit of Thomas B. Wingate at 2; and February 12, 1980 Affidavit of Ronald D. Daniels, Jr., at 2.[5] Thus, his recent receipt of the Probate Court records confirming what he already had been told cannot constitute cause sufficient to relieve him of his obligation to have raised the instant Sixth Amendment claim in one of the several, post-1979 § 2254 petitions he filed in this court. The instant claim must therefore be denied as an abuse of the writ. <u>See</u> <u>McClesky</u> v. <u>Zant</u>, 499 U.S. 467, 493 (1991); <u>see</u> <u>also</u> <u>supra</u> note 4.

For the reasons stated, the court grants respondent's motion to dismiss [document no. 25]. This order requires a corresponding denial of petitioner's renewed application for bail

---

[5]These four affidavits are attached as exhibits to petitioner's motion to initiate disciplinary proceedings against assistant attorney general John A. Curran.

9

[document no. 31] and motion for summary judgment [document no. 37]. It also moots his motion for a decision on the merits [document no. 35] and motion for order to obtain transcripts [document no. 28]. Finally, the court denies petitioner's motion to initiate disciplinary proceedings [document no. 27] as there is no basis for concluding that assistant attorney general Curran knew of the Massachusetts Probate Court records (as opposed to the name change itself) prior to 1993.

The Clerk is directed to close the case.

**SO ORDERED.**

_____
Shane Devine
Senior U.S. District Judge

Date: August 4, 1997

cc: Robert Breest, <u>pro se</u>
Attorney General of the State of New Hampshire

10